722 P.2d 983

**Donald L. CAUBLE, M. Ann Cauble, and Daniel Lee Cauble, Petitioners-Appellees,**

v.

**Thomas F. OSSELAER, receiver, and Merchants Mutual Bonding Co., Defendants-Appellants.**

**No. 1 CA–CIV 8493.**

Court of Appeals of Arizona, Division 1, Department D.

June 24, 1986.

Burch & Cracchiolo, P.A. by Catherine Conner, Phoenix, for petitioners-appellees.

Ridge & Isaacson, P.C. by Steven J. Duffy, Warren C. Ridge, Phoenix, for defendants-appellants.

## OPINION

BROOKS, Presiding Judge.

In this case court-appointed receiver Thomas F. Osselaer and his surety appeal from a judgment in favor of appellees Cauble requiring Osselaer to refund a portion of the compensation and expenses he charged against the income from the encumbered premises during his receivership, and awarding attorney's fees to Cauble pursuant to A.R.S. § 12–341.01(A). The appeal presents the following issues for our consideration: (1) whether the trial court abused its discretion in reducing Osselaer's management fee; (2) whether the trial court should have held Cauble's claim for reduction of the management fee to have been barred by laches; (3) whether Cauble was eligible for an award of attorney's fees under A.R.S. § 12–341.01 and, if

so, whether the trial court abused its discretion in fixing the amount of attorney's fees awarded.

## FACTS

The dispute that generated this litigation arose from a suit filed on October 6, 1982 against Cauble and others to foreclose their interest in the Edgewater Apartments in Phoenix, Arizona.[1] Shortly after the foreclosure suit was filed, all parties stipulated to the entry of an order appointing Osselaer as receiver of the property in question. That order required Osselaer to post a bond in the amount of $15,000. It also provided in pertinent part:

> ... said Receiver's compensation shall be paid only out of any balance from the rents, issues and profits from said premises after the payment of said indebtedness, taxes, assessments, fees, charges and repairs, and in the event there shall be no balance remaining, said Receiver shall be entitled [to] compensation as an advance of principal necessary to the preservation and operation of the premises; and such compensation shall in any event be reasonable in comparison to the total of all rents, issues and profits collected and received by said Receiver....

Osselaer's receivership commenced in early November of 1982, when Osselaer's oath of office was filed and his bond was approved by the court. Beginning in January of 1983, Osselaer sent monthly accountings to all parties to the foreclosure action. These accountings itemized the receipts and disbursements of the receivership and reflected a management fee to Osselaer of $400 per month. Osselaer's receivership continued until October of 1983. On October 13, 1983, the trial court ordered Osselaer to restore the premises to the defendants and to account to the court for all actions he took as receiver.[2]

---

1. The plaintiff and the other defendants in the underlying foreclosure suit were not involved in the controversy over Osselaer's fees and expenses as receiver and are not before us in this appeal.

2. A stipulated judgment finally resolving the underlying litigation was later entered on February 17, 1984.

In mid-November of 1983 Osselaer provided Cauble with a "statement of cash receipts and disbursements for the period beginning November 4, 1982 and ended October 31, 1983." This handwritten document reflected gross rental income of $33,681.89 during the receivership. It also reflected a total management fee of $4,800, approximately 14.25 percent of the gross rental income. By letter of December 12, 1983 Cauble's counsel informed Osselaer that final approval of the accounting was "being withheld pending further in-depth examination and analysis of the financial records you recently presented." In late 1983 or early 1984 Cauble hired Evert Rennaker, a certified internal auditor and retired employee of Garrett AiResearch, to audit the Osselaer receivership. Rennaker's audit report challenged a number of Osselaer's charges, including the management fee of $4,800.

Cauble thereafter filed a "Petition for Disbursement of Funds from Receivership Bond to Caubles and for an Order to Show Cause." In it Cauble requested reimbursement for a total of $9,333.84 in allegedly excessive charges and fees including prejudgment interest, and an additional $950 for Rennaker's audit. Included in the itemization of the allegedly excessive charges and fees was a request that Osselaer's $4,800 management fee be reduced to $1,684.09. Osselaer and his surety filed their response to the petition and following an evidentiary hearing the trial court entered a final judgment which provided in pertinent part as follows:

The court having heard the testimony of the witnesses and having reviewed the exhibits admitted into evidence, finds for the petitioners and against the respondents and directing that respondents reimburse the petitioners in the amount of $5,411.80.... [T]he Court finds that the management fee was unreasonable "in comparison to the total of all rents, issues and profits collected and received by said receiver." This management fee is therefore reduced by $2,472.68.

\* \* \* \* \* \*

IT IS FURTHER ORDERED granting petitioners' claim for attorneys' fees under Ariz.Rev.Stat.Ann. § 12–341.01. This matter arises out of the contractual relationship between the parties and the October 28, 1982 order appointing the respondent as receiver. The petitioners, as the prevailing party, are therefore entitled to an award of attorneys' fees in the amount of $4,261.25 and $188.65 in costs. Rule 54(f) and 12–331–347. *Ash, Inc. v. Mesa Unified School District No. 4,* 138 Ariz. 190, 192–193, 673 P.2d 934 (Ct.App.1983).

Osselaer timely appealed, challenging only the trial court's reduction of his management fee and its award of attorney's fees.

### OSSELAER'S MANAGEMENT FEE

· The trial court reduced Osselaer's management fee from $4,800 to $2,327.32, which is approximately seven percent of the gross rental income generated by the property during the receivership. Osselaer acknowledges that the fixing of a receiver's management fee is within the trial court's discretion. *Kennedy v. Kennedy,* 93 Ariz. 252, 379 P.2d 966 (1963). Osselaer argues that given the facts revealed by the record, the trial court abused its discretion in reducing his management fee. We cannot agree. Where a factual determination within the trial court's discretion is challenged on appeal, we cannot reweigh the evidence and substitute our own evaluation of it. Instead, we must uphold the trial court's determination unless we find it is without any evidence to support it or is absolutely contrary to the uncontradicted and unconflicting evidence on which it purports to rest. *See Arizona Dept. of Public Safety v. Dowd,* 117 Ariz. 423, 573 P.2d 497 (App.1977). Viewed against that standard, the record reveals no abuse of discretion.

The trial court's decision to reduce Osselaer's management fee to a sum approximately equal to seven percent of the gross rental income earned by the property during the receivership was specifically supported by the testimony of Dan Cauble and James Wehmueller. Cauble, a licensed

real estate broker with eight years of property management experience, testified that the market range of management fees for an apartment complex of 20 to 25 units would be five to seven percent of gross rental income. He further testified that this range would not change if the complex were run down and only half the units were rentable. In that situation, he testified his base management fee would remain at five to seven percent of the gross rental income. He testified that if he were also to be responsible for making substantial capital expenditures and capital repairs at the same time, he would charge a separate contracting fee of 10 to 20 percent of the total contracting cost. He also testified that the kinds of substantial capital improvements which would justify a separate contracting fee were not being done at the Edgewater Apartments during Osselaer's receivership. He further testified that in his opinion a management fee of 14.25 percent of gross rental income would have been excessive for the period during which the Edgewater Apartments were under Osselaer's receivership.

Cauble also testified that management fees are negotiated between parties. Osselaer apparently relies on this testimony for the proposition that the 14.25 percent management fee he charged should be deemed reasonable no matter how much it exceeded the customary range. We disagree. The fact that parties to an apartment management agreement may theoretically negotiate a management fee that is far in excess of the customary range for such fees does not support the proposition that such a fee is necessarily reasonable.

James Wehmueller, a real estate broker with approximately five years' experience in property management, testified he had told Cauble's auditor that a management fee of five percent of gross rental income would be reasonable assuming a 25–unit project with an annual income of approximately $90,000. He also acknowledged that his opinion about the reasonableness of a management fee would be affected by information concerning substantial numbers of vacancies and poor condition of the apartments. When asked to assume that an apartment project with an on-site manager had approximately 25 units of which 13 units were rentable and had rental income of $33,691 over a one-year period, Wehmueller testified:

Well, I would say, my guesstimate, again, if there was an on-site manager who is an on-site manager, can save a lot of time. And we don't have to run down there every time to show an apartment. And all the money is coming in, we basically are sort of a collecting company, so to speak. We sort of oversee all of the repairs and expenses. And I would say between five and seven percent would be the number that I would look at.

Wehmueller also testified that 14.25 percent on a rental income of $33,691 would be "somewhat excessive."

We find that the trial court's determination to reduce Osselaer's management fee to approximately seven percent of the year's gross rental income was supported by substantial evidence in the record.

### LACHES

■ Osselaer notes that Cauble and his attorneys were aware by January of 1983, two months into Osselaer's receivership, that Osselaer was charging a management fee of $400 per month. He argues that Cauble's failure to complain about the amount of the management fee until several months after the receivership had been terminated gave rise to a defense of laches. The defense of laches arises when lack of diligence on the part of the plaintiff results in an injury or prejudice to the defendant. Mere passage of time does not amount to the required prejudice. *Mobile Discount Corp. v. Schumacher*, 139 Ariz. 15, 676 P.2d 649 (App.1983). In the instant case, Osselaer argues as follows for the requisite finding of prejudice:

The prejudice to the Receiver in this matter is obvious. Had the Caubles complained back in January 1983 about the amount of fees being charged by the Receiver, assuming no resolution of the

matter, the Receiver could have requested that the court allow him to withdraw. By failing to object at the time, Cauble duped the Receiver into continuing in his capacity as Receiver, thereby diverting the Receiver's resources from such other, more profitable ventures in which the Receiver might care to engage.

■ As the court's decision in *Ivancovich v. Meier*, 122 Ariz. 346, 595 P.2d 24 (1979) holds, however, alleging prejudice due to a delay in complaining about the adequacy of an accounting is insufficient of itself to establish a defense of laches. The proponent of the defense must also "demonstrate prejudicial change of position...." *Id.* 122 Ariz. at 351, 595 P.2d at 29. In this case, Osselaer does no more than speculate on appeal that he "could" have withdrawn as receiver if Cauble had complained about his fees in January of 1983, but that due to Cauble's silence, Osselaer was "duped" into continuing as receiver and forgoing "more profitable ventures." Colorful words do not substitute for proof. Osselaer's argument states what might have been a tenable defense of laches, but Osselaer never offered evidence to support it. Cauble's claim was not barred by laches.

## ATTORNEY'S FEES

### a. *The Applicable Test*

Osselaer next contends that Cauble was not eligible for an award of attorney's fees pursuant to A.R.S. § 12–341.01,[3] and that the trial court accordingly erred in granting such an award. He specifically attacks the trial court's holding that Cauble's claim for reduction of Osselaer's receivership charges arose "out of a contract" within the meaning of A.R.S. § 12–341.01(A). Osselaer reasons that a receiver is a ministerial officer of the court that appoints him, and is not an agent of the parties but rather a fiduciary. He asserts that no contract existed with respect to the receivership, and that accordingly no such contract could have given rise to Cauble's claim.

As the judgment indicates, the trial court specifically based its holding that Cauble's claim arose "out of a contract" on *ASH, Inc. v. Mesa Unified School District No. 4*, 138 Ariz. 190, 673 P.2d 934 (App.1983). Osselaer argues that *ASH, Inc.* is distinguishable on its facts and that our earlier decision in *Trebilcox v. Brown & Bain, P.A.*, 133 Ariz. 588, 653 P.2d 45 (App.1982) states the applicable test. We disagree. *Trebilcox* concerned a tort claim for damages against a law firm based on an alleged breach of fiduciary duty. Like our supreme court's decision in *Sparks v. Republic National Life Insurance Co.*, 132 Ariz. 529, 647 P.2d 1127, *cert. denied*, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982), on which it primarily relied, *Trebilcox* outlines the test to be applied in determining whether a *tort* claimant may be eligible for an award of attorney's fees under A.R.S. § 12–341.01. In *Trebilcox*, we interpreted *Sparks* to hold:

> that the test to be applied in determining whether the "arising out of contract" language of A.R.S. § 12–341.01 is applicable is whether the "action in tort could not exist *but for* the breach of the contract." 647 P.2d at 1141.

133 Ariz. at 591, 653 P.2d at 48 (emphasis in original).[4]

---

**3.** A.R.S. § 12–341.01 provides in pertinent part:

A. In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees. This section shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney's fees.

B. The award of reasonable attorney's fees awarded pursuant to subsection A should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense. It need not equal or relate to the attorney's fees actually paid or contracted, but such award may not exceed the amount paid or agreed to be paid.

**4.** *Compare Lewin v. Miller Wagner & Co., Ltd.*, CA–CIV 7809 (Ariz.App. Mar. 25, 1986), in which we held that an accountant's duty of care to his client existed separate and apart from the contract that created the relationship between the parties, and that a successful plaintiff in an accountant malpractice action was not eligible for an award of attorney's fees under A.R.S. § 12–341.01(A).

In *ASH, Inc. v. Mesa Unified School District No. 4, supra,* we formulated a complementary and more general test. There the petitioner brought a special action seeking mandamus to cancel a contract between a school district and another contractor and to award the contract to petitioner. The trial court ruled against petitioner and awarded attorney's fees to respondents under A.R.S. § 12–341.01(A). We affirmed on appeal. We interpreted the language "arising out of" to refer to a cause or origin, and accordingly interpreted A.R.S. § 12–341.01(A) to apply to any "action in which a contract was a factor causing the dispute." 138 Ariz. at 192, 673 P.2d at 936. In *ASH, Inc.,* 138 Ariz. at 192, 673 P.2d at 936, we cited *Sparks* and *Trebilcox,* among a number of other cases, as indicating that the courts interpreting A.R.S. § 12–341.01(A) have analyzed "the essence of the action" in determining whether it arises out of a contract within the meaning of the statute. Our supreme court referred to *ASH, Inc.* with approval in *Wistuber v. Paradise Valley Unified School District,* 141 Ariz. 346, 687 P.2d 354 (1984), as follows:

> The District claims it is entitled to attorney's fees under A.R.S. § 12–341.01. Under that statute attorney's fees may be awarded in an action arising out of contract in the context of a special action for mandamus relief. *Ash, Inc. v. Mesa Unified School District No. 4,* 138 Ariz. 190, 193, 673 P.2d 934, 937 (App.1983). The District considers *Ash* new law and argues that the trial court, unaware that it could award such fees, used no discretion in denying the District's request for attorney's fees. We believe *Ash* simply applies the recognized precedents upholding a discretionary award of attorney's fees.

141 Ariz. at 350, 687 P.2d at 358.

In *Lewin v. Miller Wagner & Co., Ltd.,* discussed *supra* at 12 fn. 4, we recently discussed the rule of *ASH, Inc.* as follows:

> In *ASH* this court held that "as used in A.R.S. § 12–341.01, the words 'arising out of a contract' describe an action in which a *contract was a factor causing the dispute."* *ASH, supra* [138 Ariz.] at 192, 673 P.2d at 936 (emphasis added). This language was used in the context of an action by an unsuccessful bidder to invalidate a contract between a public body and the successful bidder. As the court noted "it is that contract which prompted the suit." *Id.* at 193, 673 P.2d at 937. Thus the contract in *ASH* was not merely "a factor", but *the* factor giving rise to the litigation. We therefore do not construe the "factor test" adopted in *ASH* to mean that simply because a contract is peripherally involved in a cause of action, A.R.S. § 12–341.01(A) is always applicable.

Slip op. at 17–18 (emphasis in original). *ASH, Inc.,* as clarified in *Lewin,* sets forth the appropriate test for the applicability of A.R.S. § 12–341.01(A) in the instant case.

b. *Application to the Facts in this Case*

■ Cauble relies on two circumstances as justifying the trial court's conclusion that the claim in question here was one "arising out of a contract" within A.R.S. § 12–341.01: (1) the receiver was appointed during the pendency of the foreclosure suit because a clause in the underlying deed of trust so required; and (2) the particular order appointing the receiver was entered pursuant to a written stipulation of the parties. We cannot agree that either of these circumstances brings this case within A.R.S. § 12–341.01(A) under the rule of *ASH, Inc.* as clarified in *Lewin.* It is certainly true that a receiver might never have been appointed in the foreclosure proceedings if it were not for a provision in the underlying deed of trust. It is also true that the immediate occasion for Osselaer's appointment was a stipulation of the parties to the foreclosure suit. The deed of trust and the stipulation, both "contracts," were thus part of the causal chain that ultimately gave rise to Cauble's claim. *It is also true, however, that the immediate genesis of Cauble's claim was not the deed of trust or the stipulation, but rather the court-imposed requirement that the receiver's compensation be "reason-*

*able" in comparison to the gross income he collected from operating the premises in question.* Accordingly, in contrast to the situation in *ASH, Inc.,* the "contracts" on which Cauble relies were not the "cause" of the litigation. Instead, as in *Lewin,* Cauble's claim arose from the alleged breach of an independent duty inherent in the legal relationship created by the trial court's order appointing Osselaer as receiver.[5] We find that the "contracts" on which Cauble relies were no more than peripherally connected with Cauble's claim against Osselaer, and that A.R.S. § 12–341.01(A) was accordingly inapplicable. The trial court therefore erred in assessing attorney's fees against Osselaer.

## CONCLUSION

The judgment is affirmed to the extent that it awards Cauble the sum of $2,472.68 plus interest as a partial refund of Osselaer's management fee. The judgment is reversed to the extent that it awards Cauble attorney's fees pursuant to A.R.S. § 12–341.01.

MEYERSON and MOELLER, JJ., concur.

NOTE: The Honorable James Moeller, Maricopa County Superior Court Judge, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Const. art. VI, § 3.

---

5. Our decision in *Lamb v. Arizona Country Club,* 124 Ariz. 32, 601 P.2d 1068 (App.1979) is inapposite. Unlike the situation in *Lamb,* Cauble's claim did not seek either to invalidate or enforce an agreement between the parties that had been merged into a judgment. Instead, it sought to enforce a status-based duty imposed by court order on Osselaer, who was a stranger to either of the "contracts" on which Cauble relies.