800 P.2d 578

**STATE of Arizona ex rel. DEPARTMENT OF HEALTH SERVICES, Plaintiff–Appellee,**

v.

**COCHISE COUNTY and its Board of Supervisors, Defendants–Appellants.**

**No. CV–89–0366–PR.**

Supreme Court of Arizona, En Banc.

Nov. 1, 1990.

Robert K. Corbin, Atty. Gen. by David J. Dir, Asst. Atty. Gen., Phoenix, for plaintiff-appellee.

Alan K. Polley, Cochise Co. Atty. by Paul A. Smith, Deputy Co. Atty., Bisbee, for defendants-appellants.

## OPINION

CORCORAN, Justice.

The state petitions for review of the court of appeals decision reversing the trial court's grant of summary judgment in favor of the state in its suit against Cochise County for reimbursement of hospital charges incurred by a county prisoner. The court of appeals held that the state must comply with the procedural requirements of the county claims statute, A.R.S. §§ 11-621, *et seq.*, before bringing suit

against the county. *State ex rel. DHS v. Cochise County*, 163 Ariz. 77, 786 P.2d 407 (App.1989). The issue presented is whether the state is a "person" within the meaning of A.R.S. § 11-622 who must present a demand to the county before filing suit. We granted review pursuant to rule 23, Arizona Rules of Civil Appellate Procedure, and have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12-120.24.

### Factual and Procedural Background

The Cochise County Superior Court ordered a county prisoner committed to the Arizona State Hospital for mental treatment during 1980 and 1981, pursuant to rule 11, Arizona Rules of Criminal Procedure. The prisoner ultimately was discharged from the hospital in March 1981. Six years later, on March 26, 1987, the state filed the complaint in this action, alleging that the county was liable for that prisoner's hospital bills, pursuant to A.R.S. § 13-3992.[1] The county moved to dismiss the claim because the state had not complied with the statutory requirement of presenting a demand to the county prior to filing suit. *See* A.R.S. § 11-622. The trial court denied the motion.

After the county filed its answer, the state moved for summary judgment. The county opposed the motion and cross-moved for summary judgment because of the state's failure to present a demand prior to filing suit.[2] The trial court granted the state's motion for summary judgment, and the county appealed.

### Court of Appeals Opinion

A majority of the court of appeals panel reversed the trial court's grant of summary

---

1. A.R.S. § 13-3992 provides as follows:
    When a defendant in a criminal action, any time prior to pronouncement of sentence, is committed to the state hospital, the expenses of transporting him to and from the hospital and of maintaining him while confined therein shall be a charge against the county in which the indictment was found or information filed, but the county may recover such expenses from the estate of the defendant or from a relative, town, city or county required

by law to provide for and maintain the defendant.

2. Although the state alleged in its complaint that it had sent timely billings for the hospital charges to the county, the county's finance director submitted an affidavit stating that those billings were never received. The state has not disputed this fact on review, and has not argued that it presented a demand in compliance with A.R.S. § 11-622.

judgment to the state, deciding that the state was a "person," within the meaning of A.R.S. § 11–622, subject to the notice of claim requirement. The majority rejected the state's argument that the definition of "person" set forth in A.R.S. § 1–215(24) excluded the state, in light of the purposes behind the claims statute. The majority further rejected the state's contention that the claims statute was similar to a statute of limitations, which cannot be invoked against the state, reasoning that because compliance with the claims statute is a substantive element of the claim, it acts to confer subject matter jurisdiction.

Judge Jacobson dissented, concluding that the definition of "person" in A.R.S. § 1–215(24) clearly excludes the state from the requirements of the county claims statute set forth in A.R.S. § 11–622. The dissent also pointed out the incongruous result of the majority's decision; although the state is required as a "person" to file a claim with the county within 6 months pursuant to the jurisdictional requirement of A.R.S. § 11–622, it is not required as a "claimant" to file a suit within the 6–month statute of limitations set forth in A.R.S. § 11–630, because of the provisions of A.R.S. § 12–510.[3] The dissent would have affirmed the trial court's summary judgment in the state's favor.

## Analysis

The county claims statute requires a "demand duly presented" to the county for any claim in excess of $500. A.R.S. § 11–621. The demand is further described in A.R.S. § 11–622 as follows:

A *person* having a claim against a county shall, within six months after the last item of the account accrues, present to the board of supervisors of the county against which the demand is held, a written itemized claim executed by him under penalties of perjury, stating minutely what the claim is for, specifying each item, the date and amount thereof, and stating that the claim and each item thereof is justly due. The board shall not consider a claim unless the demand therefor is presented within such time.

(Emphasis added.) If the demand is rejected, the claimant may then sue the county within 6 months of the rejection. A.R.S. § 11–630. The county claims statute does not define "person" in the context of who must present a demand.

The state argues that the county claims statute does not apply to the state's claim because the state is not a "person" to whom the demand requirement of A.R.S. § 11–622 would apply according to the statutory definition of "person" in A.R.S. § 1–215(24), which provides:

In the statutes and laws of the state, *unless the context otherwise requires:*
. . . .

"Person" includes a corporation, company, partnership, firm, association or society, as well as a natural person. When the word "person" is used to designate the party whose property may be the subject of a criminal or public offense, the term includes the United States, this state, or any territory, state or country, or any political subdivision of this state which may lawfully own any property, or a public or private corporation, or partnership or association. When the word "person" is used to designate the violator or offender of any law, it includes corporation, partnership or any association of persons.

(Emphasis added.)

The court of appeals recognized that this definition would not include the state as a "person," but held that this general provision "simply does not apply to the context of the county claims statute," in light of the legislative purposes of the claims statute. 163 Ariz. at 79, 786 P.2d at 409.

---

3. A.R.S. § 12–510 provides: "Except as provided in § 12–529, the state shall not be barred by the limitations of actions prescribed in this chapter." We note that the dissent did not address the fact that this section limits its provisions to statutes of limitation in "this chapter," referring to chapter 5, title 12, while the cited statute of limitations is set forth in title 11. However, A.R.S. § 12–510 is merely a partial codification of the doctrine of *nullum tempus occurit regi,* which prevents the state from being limited by such provisions. *See City of Bisbee v. Cochise County,* 52 Ariz. 1, 8, 78 P.2d 982, 985 (1938).

Those purposes include preventing county revenue from being consumed in litigation without an opportunity for the county to amicably adjust a claim, giving the county prompt notice of a claim to allow the board of supervisors to investigate while the evidence of the claim is still fresh, protecting the county against imposition, and providing a system that prevents unscrupulous public officials from depleting county funds. 163 Ariz. at 78, 786 P.2d at 408, citing *Norcor v. Southern Arizona Int'l Livestock Ass'n*, 122 Ariz. 542, 543, 596 P.2d 377, 378 (App.1979).

■ By limiting its analysis to an examination of the legislative purposes of the claims statute, the court of appeals ignored a basic premise of common law that the state, as sovereign, cannot be statutorily limited in its power to collect money due the public purse other than by express inclusion in such a limitation or by necessary inference:

> It is an ancient rule of statutory construction, ... that the sovereign is not bound by a statute of general application, no matter how comprehensive the language, unless named expressly or included by necessary implication.
>
>> It is old and familiar law, and is applicable to the *state* as well as the crown, at common law, that where a statute is general, and any prerogative, right, title or interest is diverted or taken from the king, in such case, the king shall not be bound unless the statute is made by express words or necessary implication to extend to him.

*Whiteacre, Sheriff v. Rector & Wife*, 70 Va. (29 Gratt.) 714, 716 (1878); *see* 3 Sutherland, Statutory Construction § 62.01 (4th ed. 1974).

*Commonwealth ex rel. Pross v. Board of Supervisors*, 225 Va. 492, 303 S.E.2d 887, 889 (1983). In *Pross*, the Virginia Supreme Court encountered a county claims statute similar to the one here, which required a "person" to file a claim with a county within 6 months as a prerequisite to suit in circuit court. *See* Va.Code § 15.1-522, quoted at 303 S.E.2d at 889. The court held, based on the above tenet of statutory construction, that the state was not a "person" who the county claims statute could limit. *Pross*, 303 S.E.2d at 890.

The United States Supreme Court has also employed a similar rule of statutory construction when interpreting whether the United States is included as a "person" within federal legislation:

> Since, in common usage, the term "person" does not include the sovereign, statutes employing the phrase are ordinarily construed to exclude it. But there is no hard and fast rule of exclusion. The purpose, the subject matter, the context, the legislative history, and the executive interpretation of the statute are aids to construction which may indicate an intent, by the use of the term, to bring state or nation within the scope of the law.

*United States v. Cooper Corp.*, 312 U.S. 600, 604–05, 61 S.Ct. 742, 743–44, 85 L.Ed. 1071 (1941) (holding that the use of the words "any person" was insufficient, under "the ordinary dignities of speech," to authorize an action by the federal government for treble damages under the Sherman Act).

■ Employing the above standards, we are compelled to disagree with the court of appeals that the context of the county claims statute requires departure from the legislature's general definition of "person" within the meaning of its laws. The legislature unambiguously included the state as a "person" within certain limited situations in the general definition: the state is a "person" only when its property may be the subject of a criminal or public offense. *See* A.R.S. § 1–215(24). Inclusion of the state in the statutory definition of "person" in those enumerated situations adds to the state's rights, rather than detracts from them, as inclusion would do here if we construed the state to be a person in the context of the claims statute.

Additionally, excluding the state from the county claims statute does not impede the primary purpose of that statutory scheme to protect public funds from unnecessary expenditures; it merely shifts funds from one public entity to another, or from

one "pocket" of the sovereign to another. This court long ago recognized that limitations that exist to prevent unwarranted lawsuits by private individuals against governmental entities should not be applied to prevent suits brought by the sovereign:

> The rights of the state are held by it in trust for the benefit of all of its citizens. They are enforced by actions of various natures, criminal and civil, but the purpose of their enforcement is always the common weal, and not the private benefit of any particular individual. The officers who are charged with the active duty of enforcing those rights have no personal profit to gain thereby, and therefore no inducement for the bringing of false and unwarranted actions. In other words, when an action is brought on behalf of the state, the almost conclusive presumption is that it is not, to the knowledge of those who bring it, illegal or inequitable, for it is not to be thought that the state will harass its citizens by unjust actions purposely delayed until long after the evidence which might show that the action was not based on right had disappeared. The fear of such actions, perhaps well founded when the dispute is one between private parties, is not reasonable where the state is the plaintiff.

*City of Bisbee*, 52 Ariz. at 9, 78 P.2d at 985. *See also* 3 N. Singer, *Sutherland Statutory Construction* § 62.01 at 111 (4th ed. 1986) ("the rule exempting the sovereign from the operation of the general provisions of a statute is premised on a policy of preserving for the public the efficient, unimpaired functioning of government"). Thus, unlike the court of appeals, we find that excluding the state from the county claims statute does not defeat the legislative purpose of that statute set forth above. Furthermore, the county treasury is protected in this situation because the provisions of A.R.S. § 13–3992 permit the county to obtain reimbursement from several other sources of hospital charges it pays to the state. Finally, we note that the county claims statute has been in effect, in a form substantially similar to its current one, since 1890. *See Norcor*, 122 Ariz. at 543, 596 P.2d at 378; *Yavapai County v.*

*O'Neill*, 3 Ariz. 363, 29 P. 430 (1892) (filing a claim with the county within 6 months of accrual is a condition precedent to suit). Because this is the first case this court has seen attempting to subject the state to the time of claim requirements of this 100–year–old statute, we can only assume that "executive interpretation" has not favored the county's present position in prior similar situations.

The court of appeals also reasoned, "The county claims statute appears to be one of several contexts in which the legislature intended that the state be a 'person' within the meaning of a statute even absent explicit language to that effect." 163 Ariz. at 79, 786 P.2d at 409. As examples of those other contexts, the court of appeals pointed out that cities are considered "persons" for venue purposes under A.R.S. § 12–401, that the state may convey or acquire property despite the limited statutory definitions of "grantee" and "grantor" in A.R.S. §§ 1–215(8), (9), as "persons," and that the state is also a "person" to whom notice is imputed by the recording of a land interest under A.R.S. § 33–416. We agree with the state that these other contexts are distinguishable, because inclusion of the state as a "person" in these contexts does not divest it of a property right or a statutory entitlement to collect public funds as it would in this case, but rather enlarges its rights in those contexts. The rule of strict construction of a statute in derogation of sovereignty should not be applied to those situations where the inclusion of the state within the meaning of the statute is advantageous to the state's interests. *See Sutherland*, § 62.02 at 123.

By reading the language of the county claims statute in common usage and ordinary meaning, *see* A.R.S. § 1–213, after considering the tenets of statutory construction that must apply when the right of a sovereign to collect public funds is at risk, after applying the unambiguous general definition of "person" that the legislature has applied to its laws, *see* A.R.S. § 1–215(24), and after examining the purposes of the limitations on claims against counties, we can only conclude that the legislature did not mean to include the

state within the restrictions of the county claims statute. Furthermore, "it is not our function to engraft on a statute additions which we think the legislature logically might or should have made." *United States v. Cooper Corp.*, 61 S.Ct. at 744. We therefore hold that the state is not included within the meaning of the word "person" under A.R.S. § 11–622, who is required to file a demand with the county before bringing its claim to court. If the legislature meant to preclude the state from collecting a statutory debt from a county by enacting the county claims statute, it should have specifically included the state as an entity bound by the requirements of that statute. Because the legislature did not expressly include the state, and because we find no necessary implication to divest the state of its statutory right to collect these funds under A.R.S. § 13–3992, we construe the county claims statute to exclude the state from its restrictions.

Because we resolve this case on the conclusion that the county claims statute does not apply to the state, we need not address whether compliance with that statute is a jurisdictional prerequisite in the context of this case.

### Disposition

The trial court's summary judgment in favor of the state[4] is affirmed, and the opinion of the court of appeals is vacated.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER, J., concur.

CAMERON, Justice, dissenting:

I dissent for two reasons. First, I believe that under the statute involved that the state is a person and must comply with the county claims statute.

As the majority cites:

Since, in common usage, the term "person" does not include the sovereign, statutes employing the phrase are ordinarily construed to exclude it. But there is no hard and fast rule of exclusion. The purpose, the subject matter, the context, the legislative history, and the executive interpretation of the statute are aids to construction which may indicate an intent, by the use of the term, to bring state or nation within the scope of the law.

*United States v. Cooper Corp.*, 312 U.S. 600, 604–05, 61 S.Ct. 742, 743–44, 85 L.Ed. 1071 (1941) (holding that the use of the words "any person" was insufficient, under "the ordinary dignities of speech" to authorize an action by the federal government for treble damages under the Sherman Act).

A.R.S. § 11–622 requires a person who has a claim against the county to present the claim within 6 months after the last charge accrues. The board of supervisors is not to consider any claims unless this procedure is followed. As the majority pointed out, A.R.S. § 11–622 has been in effect for 100 years. Cases addressing this statute all have a common theme: claims against the county *must* be submitted according to the statute. *See, e.g., Cochise County v. Wilcox*, 14 Ariz. 234, 236–37, 127 P. 758, 760–61 (1912); *Physical Therapy Assoc. Inc. v. Pinal County*, 154 Ariz. 405, 406–07, 743 P.2d 1, 2–3 (Ct.App.1987). To date, there have been no exceptions. Based on the long standing history of A.R.S. § 11–622, I believe that the state is a person within the statutory framework. Because the state is a person, it should have complied with the statute by filing its demand 6 months after the last charge accrued.

Second, I believe the doctrine of laches applies. The state sought restitution for the cost of hospitalizing a county prisoner for psychiatric care. The state sued the county 6 years after the prisoner was discharged and the last charge accrued. Mere lapse of time, however, will not bar a claim

---

4. We note that the county also argued in the court of appeals that the trial court's award of attorneys' fees to the state was not statutorily authorized. In its answering brief, the state waived its award of attorneys' fees and the court of appeals thus reversed that portion of the judgment awarding the state its attorneys' fees.

The state did not raise the reversal of its award of attorneys' fees in its petition for review. We therefore do not interfere with the court of appeals' reversal of the attorneys' fees award. The state did not request an award of fees on appeal or on this review.

for restitution. *Cauble v. Osselaer*, 150 Ariz. 256, 259, 722 P.2d 983, 986 (Ct.App. 1986). Restitution will be denied due to laches only if the complainant failed to pursue a remedy without adequate reason, causing the other party to suffer a loss they would not otherwise have suffered if the action had been brought with promptness. *Restatement of Restitution* § 148 (1937).

There are two elements to the defense of laches. First, one party must lack diligence in pursuing a claim. Second, the first party's lack of diligence must cause an injury or hardship to a second party. *Arizona Laborers, Teamsters, etc. v. Hanlin*, 148 Ariz. 23, 29, 712 P.2d 936, 942 (Ct.App.1985); *Western Cas. & Surety Co. v. Evans*, 130 Ariz. 333, 337, 636 P.2d 111, 115 (Ct.App.1981). Here, the state waited 6 years before suing the county for the hospitalization charges. *Restatement of Restitution* § 148 comment (b) lists specific reasons for delay that may excuse the complainant:

> The fact that the respondent stood in a fiduciary or confidential relationship to the complainant who, because of that, hesitated to begin proceedings; the fact that the respondent was in a superior economic position to the complainant as where he was a complainant's creditor or employer; the fact that the complainant could not secure proper advice or that he was ignorant and did not understand his rights; the fact that the respondent fraudulently concealed facts; the fact that the conduct of the respondent delayed proceedings, as where he could not be located, or where he sought to prevent action or caused delay by promises of satisfaction; or the fact that evidence was not available.

*Restatement of Restitution* § 148 at 590–91.

The state offers as its only excuse for not filing a claim under the guidelines of A.R.S. § 11–622, that it is not a "person" under the statute. Because I believe that the state is a person for purposes of A.R.S. § 11–622, I do not believe a valid excuse for the 6–year delay existed. Moreover, the state does not meet any of the specific excuses provided by the *Restatement*. The

majority assumes that because this is the first case attempting to subject the state to the 6–month time requirement, the county's present position has not been favored. The statute's history, however, indicates the contrary. This statute has been in effect for 100 years. A more valid assumption, therefore, is that the state has, with the exception of the present case, complied with the statute's time of claim requirement.

The second element to the laches defense requires an injury or hardship to the county due to the state's lack of diligence. Both the court of appeals and the majority of this court discuss the purposes of A.R.S. § 11–622 as identified in *Norcor of America v. Southern Ariz. Int'l Livestock Ass'n*, 122 Ariz. 542, 543, 596 P.2d 377, 378 (Ct.App.1979). The purposes identified are: (a) to prevent county revenue from being consumed in litigation, the county must first have an opportunity to discharge or adjust the obligation before facing the costs of a lawsuit; (b) to give the county prompt notice of any claim allowing the board of supervisors to investigate claims while evidence is still fresh and witnesses are available; and (c) to prevent public officials from depleting the public treasury. *Id.* at 543, 596 P.2d at 378.

Here, lengthy litigation, spanning three and one-half years, is unnecessarily consuming the county's revenue. The initial action occurred in 1980–81, and the state did not file suit until 6 years later. The evidence became stale during this time. Witnesses are no longer available to aid the board of supervisors in its investigation of the state's claim. The legislature enacted the statute to prevent exactly these hardships. *Id.* A.R.S. § 11–622 requires presentment of a claim within 6 months after the last chargeable items have accrued, in order to effectuate these purposes. To date, *anyone* having a claim against the county must follow the presentment requirement. Because of the state's unreasonable lack of diligence and resulting hardship to the county, laches should bar the state's claim.

Moreover, in *Maricopa City v. Cities & Towns of Avondale, Etc.*, 12 Ariz.App. 109, 113, 467 P.2d 949, 953 (1970), the court

reasoned that "where two [public bodies] are the interested parties there is no good reason why public policy should require that the people of one [public body] be penalized for the laches of the ... other. The law should, as far as possible, protect both, without preference to either." *Maricopa*, 12 Ariz.App. at 113, 467 P.2d at 953 (citing *State ex rel. O'Connor v. Clay County*, 226 Iowa 885, 894, 285 N.W. 229, 235 (1939)). Here, the state apparently has complied with the county claims statute in the past but, due to some error, it did not file this particular claim until 6 years after all charges accrued. We should not penalize the county for the laches of the state. *Maricopa* 12 Ariz.App. at 113, 467 P.2d at 953.

The county has met both of the elements necessary for the defense of laches. Also, considering that as between two public bodies the reasons for denying laches dissipates, I believe laches bars the state's claim.