966 P.2d 557 (1998)
192 Ariz. 390
STATE of Arizona, Plaintiff-Appellee,
v.
ARIZONA PROPERTY AND CASUALTY INSURANCE GUARANTY FUND, Defendant-Appellant.
No. 1 CA-CV 97-0488.
Court of Appeals of Arizona, Division 1, Department C.
August 27, 1998.
*558 Surrano & Massey, P.C. by Kenneth Januszewski, Charles J. Surrano Phoenix, for Defendant-Appellant.
LaMar & Grasso, P.C. by Steven A. LaMar, Clarisse R. McCormick, Scottsdale, for Plaintiff-Appellee.
EHRLICH, Judge.
¶ 1 This appeal presents the question whether the State of Arizona ("State") may sue the Arizona Property and Casualty Insurance Guaranty Fund ("Fund") when the Fund refuses to pay a claim after the State's insurer has become insolvent. We conclude that it may.

FACTS AND PROCEDURAL HISTORY
¶ 2 In 1983, the Arizona Department of Transportation ("ADOT") entered a contract with Ball, Ball & Brossamer ("BB & B"), a California corporation, for highway construction. As required by the contract, BB & B obtained a liability insurance policy naming the State and ADOT as insureds. The policy was issued by Mission National Insurance Company.
¶ 3 In 1984, several men were injured and two men died as the result of a construction accident,[1] and a lawsuit against the State was filed. Although Mission Insurance undertook the defense of the suit, it subsequently was placed in receivership in California and ordered not to expend further money either in defense or settlement of the claims against the State. The Arizona Department of Administration ("ADOA"), on behalf of ADOT, settled with the plaintiffs.
¶ 4 ADOA filed a notice of claim with the California Insurance Guaranty Association to recover the money to which it was entitled had its insurer not been placed in receivership; the claim was denied.[2] ADOA then filed a claim with the Fund because Mission Insurance was authorized to do business in Arizona; that claim also was denied. The State thus sought a declaratory judgment that the Fund was obligated to pay the claim.
¶ 5 The Fund defended on the basis that the suit was a case of the State seeking recovery from itself. The superior court disagreed. It entered summary judgment in favor of the State as follows in pertinent part:
1. The State of Arizona has standing to bring this lawsuit.
2. The State of Arizona was an insured under the Mission Insurance Policy and is officially a "resident" of this state.
3. Mission Insurance is insolvent.
4. The Arizona Guaranty Fund is responsible for the monies paid.
After formal entry of judgment, the Fund appealed.

DISCUSSION
¶ 6 The validity of the underlying claim is not being challenged. The Fund argues, as it did below, that the State cannot *559 sue the Fund because the Fund is a component of the State. The issue thus is one of statutory interpretation, a question of law which we consider de novo. State Compensation Fund v. Superior Court, 190 Ariz. 371, 374-75, 948 P.2d 499, 502-03 (App.1997).
¶ 7 The Fund was created by the legislature in 1970 to pay claims against insolvent insurers. ARIZ.REV.STAT. ANN. ("A.R.S.") §§ 20-661 et seq.; Arizona Prop. and Cas. Ins. Guar. Fund v. Helme, 153 Ariz. 129, 132, 735 P.2d 451, 454 (1987).[3] By design, it is separate and distinct in its operation. First, while it is "within the department of insurance," the Fund has a director and exercises its powers through a guaranty fund board of sufficient independence that the Fund may appear in court, borrow funds, sue and be sued, and negotiate and be a party to contracts. A.R.S. §§ 20-662 through 20-664. Second, the Fund's money comes not from general revenues but is collected from insurance companies doing business in Arizona, such as Mission Insurance, based on the amount of their in-state business. A.R.S. § 20-666. Third, as is consistent with the source of its money, the Fund is only "liable to the same extent that the insolvent insurer would have been liable under its policy." Arizona Prop. and Cas. Ins. Guar. Fund v. Herder, 156 Ariz. 203, 205, 751 P.2d 519, 521 (1988) (quoted in A.H. v. Ariz. Prop. and Cas. Ins. Guar. Fund, 189 Ariz. 378, 384, 943 P.2d 738, 744 (App.1997); Betancourt v. Ariz. Prop. and Cas. Ins. Fund, 170 Ariz. 296, 298, 823 P.2d 1304, 1306 (App.1991)); A.R.S. § 20-667. Thus it is responsible only for "covered claims," A.R.S. § 20-667, payment for which does not come from the general fund but is statutorily limited to money from the Fund. A.R.S. § 20-662(C) ("All costs, expenses and liabilities of the fund shall be paid by the fund and shall not be a general obligation of the state.").
¶ 8 The Fund asserts that the State may not make a claim against it because the State is neither a "person"[4] nor a resident of Arizona. It relies on two statutes for this argument:
Any person recovering pursuant to this article shall be deemed to have assigned his or her rights under the policy to the fund to the extent of his or her recovery from the fund. Every insured or claimant seeking the protection of this article shall cooperate with the fund to the same extent as such person would have been required to cooperate with the insolvent insurer. The fund shall have no cause of action against the insured of the insolvent insurer for any sums it has paid.
A.R.S. § 20-672(A) (emphasis added).
Any person having a claim which may be recovered under more than one insurance guaranty fund or its equivalent or who is insured under more than one policy, shall seek recovery first from the fund of the place of residence of the insured or, if it is a first-party claim for damage to property with a permanent location, from the fund of the location of the property, or shall first exhaust coverage under such other policy....
A.R.S. § 20-673(B)(emphasis added).
¶ 9 According to the Fund, the legislature has defined "person" not to include the State, citing A.R.S. section 1-215(26):
"Person" includes a corporation, company, partnership, firm, association or society, as well as a natural person. When the word "person" is used to designate the party whose property may be the subject of a criminal or public offense, the term *560 includes the United States, this state, or any territory, state or country, or any political subdivision of this state which may lawfully own any property, or a public or private corporation, or partnership or association. When the word "person" is used to designate the violator or offender of any law, it includes corporation, partnership or any association of persons.
This definition does exclude the State, State ex rel. Dep't of Health Services v. Cochise County, 166 Ariz. 75, 77, 800 P.2d 578, 580 (1990), but we nonetheless reject the Fund's argument.
¶ 10 First, the use of the word "person" in A.R.S. sections 20-672 and 20-673 is not as significant as the Fund argues. Those sections are ancillary to the pertinent section, section 20-661(3), which uses "insured," not "person," in defining who has a "covered claim" against the Fund.
"Covered claim" means an unpaid claim... which arises out of and is within the coverage of an insurance policy to which this article applies issued by an insurer, if such insurer becomes an insolvent insurer after August 27, 1977 and the claimant or insured is a resident of this state at the time of the insured event or the property from which the claim arises is permanently located in this state....
There is no doubt in this case that the State is an "insured," as would be logical given the legislation compelling the State to procure insurance:
A. The department of administration shall obtain insurance against loss, to the extent it is determined necessary and in the best interests of the state as provided in subsection F of this section, on the following:

* * *
3. The state and its departments, agencies, boards and commissions and all officers, agents and employees thereof and such others as may be necessary to accomplish the functions or business of the State and its departments, agencies, boards and commissions against liability for acts or omissions of any nature while acting in authorized governmental or proprietary capacities and in the course and scope of employment or authorization except as prescribed by this chapter.
A.R.S. § 41-621(A)(3). In this regard, sometimes and as was true with the BB & B contract, the State acts by requiring a contractor to obtain insurance and make the State an insured.
¶ 11 The Fund responds that, while this statute requires the State to obtain insurance, it does not allow the State to make a claim against the Fund, unlike other insureds. We do not accept this argument. This would compel the State to obtain a protection of which it could only partially avail itself. It would be illogical to require the State to purchase insurance to safeguard itself against liability and yet to exclude it from the protection which other insureds are given when their insurer becomes insolvent.
¶ 12 Second, by its terms, A.R.S. section 1-215(26) is not the pertinent definition. It applies "unless the context otherwise requires," and the legislature has provided a different, more expansive definition of "person" for purposes of the insurance code, A.R.S. Title 20:
"Person" includes an individual, company, insurer, association, organization, society, reciprocal or interinsurance exchange, partnership, syndicate, business trust, corporation and entity.
A.R.S. § 20-105. The use of a word as broad as "entity" shows a legislative intent to broadly define "person" for the purpose of the insurance laws. Indeed, the State has declared itself to be a "public entity" in a complementary statute, A.R.S. section 12-820:
In this article [actions against public entities or public employees], unless the context otherwise requires:

* * *
6. "Public entity" includes this state and any political subdivisions of this state.
7. "State" means this state and any state agency, board, commission or department.
Further, the State, as a "public entity" acting through the legislature, has defined itself *561 functionally by the statutes which allow it to conduct business, enter contracts, hire and fire, buy and sell, incur debt, sue and be sued, promulgate and enforce rules, regulations and laws, and account for its actions. E.g., ARIZ. CONST. art. II, sec. 4, art. IX, sec. 5, 8; A.R.S. titles 13, 28, §§ 12-821, 38-101 et seq., 41-2501 et seq.; cf. State Compensation Fund, 190 Ariz. 371, 948 P.2d 499.
¶ 13 The Fund then argues that the State cannot be a claimant under A.R.S. section 20-661(3) upon the following rationale: "The State of Arizona cannot be a resident of Arizona because the state is Arizona." This argument assumes too narrow a definition of "State."
¶ 14 "The usual meaning of the term `state' is not easily determined because it has been defined and used in various ways in statutes and court decisions." Amphitheater Unified School District No. 10 v. Harte, 128 Ariz. 233, 234, 624 P.2d 1281, 1282 (1981). While, in some circumstances, it means the locale or geographic area, in other contexts, it means the entity consisting of the people and their government. One customary definition of "state" is:
4.a: a body of persons constituting a special class in a society b. the members or representatives of the governing classes assembled in a legislative body; 5 a: a politically organized body of people usu. occupying a definite territory; b: the political organization of such a body of people;
MERRIAM-WEBSTER'S DICTIONARY (10th ed.1997); see COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY (1987); WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY (2d ed.1983); see also U.S. CONST. art. 1, sec. 8 ("The Congress shall have Power ... To regulate Commerce ... among the several States ...;); U.S. CONST. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."); THE FEDERALIST No. 39 (James Madison) (Benjamin Fletcher Wright ed.1996); Joseph Story, COMMENTARIES ON THE CONSTITUTION of the United States, § 454, p. 441(1833)("So, the word `state' ... sometimes means, the separate sections of territory occupied by the political societies within each; sometimes the particular governments established by these societies; sometimes these societies as organized into these particular governments; and lastly, sometimes the people composing these political societies in their highest sovereign capacity," citing "Mr. [James] Madison's Virginia Report, 7 January 1800, p. 5."). It is the State as constituting the people and their government which conducts the business of the State within and without the geographic delineation of Arizona. This includes the conduct of business such as the highway construction which generated the loss which is the subject of this case.
¶ 15 The State as an entity, functioning as the collective people's single governing body and performing the business assigned to it by law, is analogous to any private company which takes as its place of "residence" the location of its company headquarters, statutory agent, legal counsel and/or principal place of business. E.g., Cacho v. Superior Court, 170 Ariz. 30, 32-33, 821 P.2d 721, 723-24 (1991). These same factors make the State as an insured and as a claimant a resident of Arizona (the territorial area) for the purposes of A.R.S. section 20-661(3).
¶ 16 The case State ex rel. Dep't of Health Services v. Cochise County, 166 Ariz. 75, 800 P.2d 578 (1990), does not support the Fund's argument as it contends. Although the supreme court held that the State is not a "person" required to file a claim before filing suit against a county under A.R.S. section 11-622, id. at 77, 800 P.2d at 580,[5] in so doing, the court applied the general rule that the State's power to collect money due the public purse cannot be limited except expressly or by necessary inference. Id. at 78, *562 800 P.2d at 581. "Since, in common usage, the term `person' does not include the sovereign, statutes employing the phrase are ordinarily construed to exclude it. But there is no hard and fast rule of exclusion." Id., quoting United States v. Cooper Corp., 312 U.S. 600, 604-05, 61 S.Ct. 742, 85 L.Ed. 1071 (1941). Instead:
The rule of strict construction of a statute in derogation of sovereignty should not be applied to those situations where the inclusion of the state within the meaning of the statute is advantageous to the state's interests.
Id. at 79, 800 P.2d at 582 (citing 3 N. Singer, SUTHERLAND STATUTORY CONSTRUCTION § 62.01 at 123 (4th ed.1986)). The maxim exists because the State's function is to further the interests of the people: "[T]he rule exempting the sovereign from the operation of the general provisions of a statute is premised on a policy of preserving for the public the efficient, unimpaired functioning of government." Id. (quoting SUTHERLAND § 62.01 at 111).
¶ 17 This case is distinguishable from that of Cochise County if for no other reason than, as has been set forth above, the Fund's money and operations are independent of the State's general obligations. A.R.S. § 20-662(C). Additionally, while this case poses a situation antithetical to that of Cochise County, our resolution is consistent with the application of the general rule espoused by the court. To allow the State to make a claim against the Fund protects the public and its purse. The State, as an insured whose insurer has become insolvent, is acting in furtherance of its duty to recover money due the treasury when it proceeds against a fund created from assessments against insurance companies to pay such insureds for their losses.
¶ 18 The Fund then argues that the State cannot sue itself for money damages, citing District No. 55 v. Musselshell County, 245 Mont. 525, 802 P.2d 1252, 1254 (1990) ("Generally, courts will not allow suits between governmental entities unless express or implied statutory authority exists"); Carbon County School Dist. No. 2. v. Wyoming State Hosp., 680 P.2d 773, 774 (Wyo.1984) ("One cannot sue himself"). We reject the argument that allowing a suit such as this would constitute shifting general state money from the account of one department to another. Again, the Fund's argument is flawed in its premise because, given the Fund's design, the State is not suing itself when it proceeds against the Fund. "All costs, expenses and liabilities of the fund shall be paid by the fund and shall not be a general obligation of the state." A.R.S. § 20-662(C). The Fund's payment of the State's claim does not result merely in an accounting entry. Rather, the loss occasioned by the insolvency of an insurance carrier is shifted to and borne by the insurance industry. It is therefore logical for the State to be able to recover from the Fund, and, if the State may make a claim against the Fund, the State may sue the Fund if it refuses to pay the claim. See A.R.S. § 20-664(B)(4).
¶ 19 Finally, the Fund complains that there is no showing that ADOA pursued the State's right of indemnity against BB & B. However, any failure by ADOA to take advantage of its contractual right of indemnity has no bearing on whether the State may make a claim against the Fund.

CONCLUSION
¶ 20 The judgment is affirmed.
GRANT, P.J., and SULT, J., concur.
NOTES
[1] The Fund's opening brief contains a description of the accident to which the State correctly has objected as not supported by the record to which this court is limited. E.g., GM Dev. Corp. v. Community Am. Mortg. Corp., 165 Ariz. 1, 4, 795 P.2d 827, 830 (App.1990).
[2] Under California Insurance Code section 1063.1(c)(3), "covered claims" shall not include any obligation of the insolvent insurer arising out of any obligation to any state or the federal government.
[3] The Act was amended by the Second Regular Session of the Forty-third Legislature to comply with the decision issued by the Arizona Supreme Court in Arizona Life and Disability Insurance Guaranty Fund v. Honeywell, 190 Ariz. 84, 945 P.2d 805 (1997). None of the amendments has an impact on the issues of this appeal.
[4] In the superior court, the Fund challenged the State's ability to sue the Fund, but it did not include this argument that the State is not a "person." Arguments not raised below generally are waived. E.g., Sahf v. Lake Havasu City Ass'n for the Retarded and Handicapped, 150 Ariz. 50, 53, 721 P.2d 1177, 1180 (App.1986). However, we may exercise discretion to consider arguments first raised on appeal when the issue is one of general statewide importance and a legal issue is involved which may be resolved without additional facts. Barrio v. San Manuel Division Hospital for Magma Copper Co., 143 Ariz. 101, 104, 692 P.2d 280, 283 (1984). We do so here.
[5] "A person having a claim against a county shall, within six months after the last item of the account accrues, present to the board of supervisors of the county against which the demand is held, a written itemized claim executed by him under penalties of perjury, stating minutely what the claim is for, specifying each item, the date and amount thereof, and stating that the claim and each item thereof is justly due. The board shall not consider a claim unless the demand therefor is presented within such time."