**MIDLAND BANK, a Missouri State Bank, as assignee of The Resolution Trust Corporation, as Receiver for Otero Savings and Loan Association, and as Receiver for First Federal Savings and Loan Association, Plaintiff–Appellee,**

v.

**GALLEY COMPANY, a Colorado general partnership, and R. Gary McCauley, Defendants–Appellants,**

and

**concerning The Principle Corporation, Appellee.**

No. 97CA0092.

Colorado Court of Appeals, Div. I.

April 30, 1998.

Rehearing Denied May 28, 1998.

Certiorari Denied Feb. 16, 1999.

Anderson, Dude, Pifher & Lebel, P.C., Lawrence A. Hecox, Special Counsel, Colorado Springs, Colorado, for Plaintiff–Appellee

J. Gregory Walta, P.C., J. Gregory Walta, Colorado Springs, Colorado, Flynn McKenna Wright & Karsh, LLC, Bruce M. Wright, Michael C. Potarf, Colorado Springs, Colorado, for Defendants–Appellants.

Sparks Dix, P.C., Scott W. Johnson, Colorado Springs, Colorado, for Appellee.

Opinion by Judge DAVIDSON.

Defendants, Galley Company and R. Gary McCauley, appeal from the partial summary judgment entered against them determining, as a matter of law, that the amount paid to The Principle Corporation (Principle), hired by plaintiff, Midland Bank as assignee of the Resolution Trust Corporation (RTC), as receiver for Otero Savings and Loan Association (Otero) and for First Federal Savings and Loan Association, was a reasonable and authorized fee for services Principle performed as the management company for the receivership property. Defendants also appeal from the summary judgment determining that Michael Devenyns, president of Principle, was not liable personally for the court-ordered reimbursement of management expenses, costs, and fees paid to Principle for services it performed as the management company. We reverse and remand.

Defendants owned a shopping center in which the anchor tenant decided to close its store. Although the anchor tenant continued to pay rent, in its absence the other tenant stores experienced financial difficulties. As a result, defendants defaulted on the loan held by Otero on the shopping center. Defendants began negotiations with the anchor tenant concerning termination and a buyout of the tenant's lease. During the course of the negotiations, defendants' loan was acquired by RTC. RTC petitioned the court for and obtained the appointment of Principle as receiver for the property.

Principle then hired itself to serve as the management company for the receivership property, and the propriety of that action has not been challenged and is not an issue on appeal. Principle's agreement with RTC provided for payment of a monthly management fee of 5% of the gross revenues or $2,000, whichever was greater.

Subsequently, Principle, as the receiver, entered into negotiations with the anchor tenant concerning the termination and buyout of its lease. Principle submitted to the parties and the trial court a settlement proposal with the anchor tenant outlining the terms of the settlement and the benefit to the receivership estate. The proposal did not mention any fee to be paid to Principle as the management company or in any other capacity.

Prior to the settlement payment by the anchor tenant, Principle, through its president, Michael Devenyns, issued itself a check for $164,938.35 from the receivership funds for services rendered in connection with the lease termination settlement. This payment, according to Devenyns, was a 5% management fee due to Principle, as the management company, under the terms of its management agreement with RTC. However, Principle did not discuss this payment with defendants or disclose it to the court.

The trial court approved the proposed settlement. The court's order contained no pro-

vision setting forth or approving any fee to be paid to Principle under the settlement.

Pursuant to the approved settlement, the parties filed a stipulated motion for distribution of the net proceeds from the anchor tenant's payment in consideration for terminating its lease and for partial discharge of Principle as the receiver. The court partially discharged Principle pending a final report and retained limited jurisdiction over it in order for the parties to review and file objections to the final report. The same afternoon, Principle's attorney filed an *ex parte* motion with another judge, seeking final discharge of Principle and release of the receivership bond. The motion was granted and the bond was released.

Shortly after distribution of the proceeds of the settlement, defendants attempted to obtain financial and other records from Principle in order to file final tax returns on the shopping center. A dispute arose between defendants and Principle regarding the release of certain records. Defendants also discovered at that time that Principle had been discharged as the receiver by another judge. Defendants then filed a motion with the trial court to vacate the order discharging Principle and to compel Principle to turn over the disputed records. The trial court, after reviewing the files, vacated the order discharging Principle for lack of a final report, and appointed a special master to make recommendations to the court concerning Principle's application for approval of its final report and its request for final discharge.

The special master received briefs and heard testimony from the parties. Following a hearing, the master filed a report with the trial court recommending that it disallow certain reimbursed expenses and payroll expenses claimed by and paid to Principle in its capacity as the management company. The report also recommended that the trial court order Principle to return the fee paid from the lease termination settlement because the services rendered, in the master's view, were not management services but receivership services which were to be compensated at an hourly rate as set forth in the receiver's order of appointment.

After receiving the master's report, Principle filed a motion for partial summary judgment asking the court to determine that it was entitled to retain the fee it had been paid. The trial court granted this motion.

Subsequently, the court, after reviewing the master's report and objections to the report filed by the parties, and hearing arguments, issued its final order. It determined that Principle was not entitled to certain reimbursed expenses and payroll expenses as compensated management services, and ordered those amounts returned to the receivership estate. The court reaffirmed, however, that Principle did not have to forfeit the fee received from the lease termination settlement. This appeal followed.

## I.

Defendants contend that the trial court erred in granting summary judgment allowing Principle to retain the lease termination settlement fee because it applied the wrong standard in making its determination and because genuine issues of material fact exist whether the fee was reasonable or authorized. We agree.

Summary judgment is a drastic remedy, to be granted only upon a showing that no genuine issue of material fact exists. The non-moving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts and all doubts must be resolved against the moving party. *Peterson v. Halsted,* 829 P.2d 373 (Colo. 1992).

## A.

A receiver is an officer of the trial court exercising jurisdiction over a receivership estate. *Marker v. City Savings, Building & Loan Ass'n,* 101 Colo. 302, 73 P.2d 991 (1937); *see also Interlake Co. v. Von Hake,* 697 P.2d 238 (Utah 1985) (receivership an equitable matter within the control of the court). The court retains jurisdiction over the receiver until the order discharging the receiver is entered. *Four Strong Winds, Inc. v. Lyngholm,* 826 P.2d 414 (Colo.App. 1992). Accordingly, supervision and disposition of the receivership estate lie within the

trial court's jurisdiction. Hence, the court has the duty to resolve disputed issues of law and fact pertaining to the receivership.

■ An award of fees and costs with respect to the administration of a receivership lies within the sound discretion of the trial court and will not be disturbed absent an abuse of such discretion. However, such award to a receiver, over the objection of a party, without a hearing or a finding that the fee is reasonable, is an abuse of discretion. A timely exception raises a fact question and the party raising the exception is entitled to an opportunity to be heard and present evidence. *K–Partners III, Ltd. v. WLM Hospitality Corp.*, 883 P.2d 604 (Colo.App.1994).

■ Here, the trial court, relying solely on *McCormick v. Diamond Shamrock Corp.*, 175 Colo. 406, 487 P.2d 1333 (1971), determined that defendants' claim for the return of the lease termination settlement fee to the receivership estate failed as a matter of law. The court did not determine whether the disputed fee was authorized or reasonable.

*McCormick*, however, held only that an assignee takes as good a claim as that held by the assignor. Although it is true that Midland Bank, as RTC's assignee, would be subject to the same claims and defenses as RTC, this determination does not resolve the issues before the trial court regarding Principle's entitlement to the disputed fee.

### B.

Principle argues that, nevertheless, the $164,938.35 fee was authorized both under the terms of its management proposal and by RTC's consent to the fee at the time of the lease termination settlement and that, therefore, no issue of material fact remained as to its entitlement to the fee. Defendants, however, argue that genuine issues of material fact exist concerning (1) whether the payment properly was paid as compensation for management activities and, if not, whether it was reasonable compensation for receivership activity; and (2) if it was a management fee, whether RTC had authorized or consented to payment of 5% of the lease termination payment such that Principle should receive

the fee with no further inquiry as to its reasonableness. We agree with defendants.

### 1.

■ The order of appointment of a receiver is the measure of the receiver's power. *Zeligman v. Juergens,* 762 P.2d 783 (Colo. App.1988).

Here, the court's order appointing Principle as the receiver authorized Principle, among other tasks:

> to enter into contracts with third parties to accomplish any of the powers of the receivership, including the hiring of a management company....

> to use rents and revenues ... for payment of costs and expenses of the receivership ... to compensate the Receiver in the amount of not more than $125.00 per hour for his time reasonably spent in the exercise of his receiver's function, but not including property management functions.

The special master found no impropriety in Principle serving both as receiver and also as the management company for the receivership property nor did the master question the percentage used in compensating management activities. Nevertheless, the master recommended that the fee paid to Principle be returned to the receivership estate, concluding that the negotiations and other services performed by Principle relative to the lease termination settlement were receivership activities for which compensation was set forth in the trial court's order of appointment.

■ The trial court, however, did not determine whether these activities were performed by Principle in its role as the receiver or as the management company. Therefore, the court must make a threshold determination as to whether compensation was owed to Principle for receivership activity or for management services.

If the services performed by Principle in obtaining the settlement agreement are determined to be receivership activities, then the trial court must hold a hearing to determine the reasonableness of the hours expended in these activities and the appropriate fee to be awarded for such services,

pursuant to the order of appointment. *See K–Partners III, Ltd. v. WLM Hospitality Corp., supra.*

### 2.

If the services are determined to be management activities, Principle further contends that the fee received was authorized both under the terms of the management proposal between it and RTC, and by a telephone conversation between Principle's president and a representative of RTC and that, therefore, no further inquiry is needed. Alternatively, Principle contends that, even if the fee was not expressly authorized, it was consented to by RTC and defendants because they were aware that payment might be made and did not object to it when the settlement agreement was finalized. We disagree with both contentions.

The pertinent provision of the agreement upon which Principle relies provides that compensation to Principle for management services would be "5% of the gross revenues per month or $2,000.00 per month, whichever is greater." Principle also relies on a handwritten notation made by its president relating a phone call between the president and a representative of RTC that "5% on $3.5M doesn't bother them [at] all" and naming in the note certain persons as the ones who "all make decisions in receiverships."

■ As discussed, an award for payment of costs and expenses incidental to a receivership lies within the discretion of the trial court. *See Van Schaack Holdings, Ltd. v. Fulenwider,* 768 P.2d 740 (Colo.App.1988), *aff'd,* 798 P.2d 424 (Colo.1990); *K–Partners III, Ltd. v. WLM Hospitality Corp., supra.*

■ Thus, it necessarily follows that it also is within the trial court's authority to determine the reasonableness of a management fee as a part of its jurisdiction over the receivership estate. This is true regardless whether there has been consent or agreement by the parties. The fact that parties may negotiate a fee does not require a trial court necessarily to find that such fee is reasonable. To the contrary, the determination of a reasonable fee remains within the

discretion of the trial court. *See Cauble v. Osselaer,* 150 Ariz. 256, 722 P.2d 983 (1986).

■ Here, we agree with defendants that a question of material fact exists as to whether the handwritten note, purporting to summarize a telephone conversation with a representative of RTC, is sufficient to establish that the fee was authorized. We also agree that questions of fact exist as to whether RTC's and defendants' initial silence concerning the fee, not mentioned in the proposed settlement agreement or in the court's order approving such, can be deemed to be their consent to the fee.

Furthermore, even if the note was sufficient to authorize the payment of the management fee or if consent was given, the defendants' objections to its payment at the time Principle submitted its final report obligated the court to hold a hearing and determine its reasonableness.

In making that determination, whether the fee was authorized by RTC is a relevant, but not dispositive, factor for the trial court to consider. *See Van Schaack Holdings, Ltd. v. Fulenwider, supra; Cauble v. Osselaer, supra.*

### II.

Defendants also contend that Principle's president, Michael Devenyns, should be held liable personally for the amounts paid to Principle as fees and for reimbursement of costs and payroll expenses as ordered by the court. They argue that, because Devenyns signed the order of appointment in his individual capacity and held himself out as the receiver, he should be held liable, as a *de facto* receiver, for a breach of fiduciary duty in making these payments. We conclude that further proceedings are necessary to resolve this issue.

### A.

■ Contrary to Principle's contention that defendants are barred from raising this issue because the trial court lacks jurisdiction over Devenyns, we note that defendants are seeking to hold him personally liable only in his role as a *de facto* receiver. If Devenyns, in fact, held himself out as the receiver, then

he necessarily subjected himself to the court's jurisdiction.

### B.

The term *de facto* is used to describe one who, although not possessing the legal authority, for all practical purposes acts as though he or she possesses such authority. *Black's Law Dictionary* 416 (6th ed.1990); *see City Council v. People ex rel. Ferguson,* 19 Colo.App. 399, 75 P. 603 (1904) (*de facto* officer is one who, although not legally appointed to the office, executes the duties of the office under some color of right).

 Here, the court appointed Principle as the receiver for the property. Principle argues that the record shows that Devenyns signed the order of appointment as the president of Principle and not in his individual capacity. It argues that almost all of the relevant documents were signed by Devenyns for Principle, which was clearly identified as the receiver. Defendants, however, rely on documents in which Devenyns refers to himself as the receiver, a letter from Devenyns to the trial court in which he refers to Principle as his agent, and a court order which states that "[t]he receiver in this action, Devenyns (the Receiver) is hereby discharged...."

In light of this conflicting evidence, we conclude that further proceedings are necessary to determine whether, under the circumstances here, Devenyns acted as a *de facto* receiver and, thus, was liable personally for those amounts to be reimbursed to the receivership estate.

### C.

 Defendants further contend that, as a *de facto* receiver, Devenyns breached a duty of care owed to them as a fiduciary of the court and the receivership estate. If Devenyns is determined to be the *de facto* receiver, then he owed a duty of care as such, and a determination must be made whether such duty was violated by his actions relating to the payment fees and other expenses. *See K–Partners III, Ltd. v. WLM Hospitality Corp., supra* (one appointed as a receiver serves as a fiduciary of the court and of those interested in the estate).

The judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

METZGER and ROY, JJ., concur.