840 P.2d 1037

**Dr. William Lo PIANO, Adolpho S. Echeveste, Judy Aldrich, Robert A. Lizardi and Robert P. Muller, in their capacity as the Executive Board of the Tempe Group Insurance Fund, Plaintiffs–Appellants,**

v.

**Lawrence A. HUNTER, a participant in the Tempe Group Insurance Fund, and Elizabeth J. Hunter, his wife, Defendants–Appellees.**

No. 1 CA–CV 90–260.

Court of Appeals of Arizona, Division 1, Department C.

April 23, 1992.

Review Denied Dec. 1, 1992.

David L. Niederdeppe, Glendale, for plaintiffs-appellants.

Riggs–Carey, Ltd. by Harland E. Carey, Phoenix, for defendants-appellees.

## OPINION

GRANT, Presiding Judge.

The issue presented in this appeal is whether a third-party reimbursement provision is enforceable by a self-insured trust fund established pursuant to Ariz.Rev.Stat. Ann. ("A.R.S.") section 15–382. For the reasons stated below, we hold that it is not and affirm the trial court's granting of summary judgment in favor of defendants-appellees.

## FACTS

Defendant-appellee Lawrence A. Hunter ("Hunter") is an employee of the Tempe School District No. 3 ("the School District"). The Tempe Group Insurance Fund ("the Fund") is a self-insured trust fund established pursuant to A.R.S. section 15–382(C) to provide health and other benefits to the School District's eligible employees, retired employees and their dependents. Plaintiffs-appellants constitute the executive board of the Fund ("the Board"). At all times material to this action, Hunter was a participant in the Fund's plan of benefits.

The Fund operates under the terms of an agreement and declaration of trust ("the trust document"). Section 6.10 of the trust document allows the trust to be subrogated to any cause of action a covered person has against a third-party tort-feasor and requires repayment to the trust of any amounts paid by the trust to the plan participant ("the third-party reimbursement provision"). It provides:

*SECTION 6.10* The Trust shall be subrogated, to the extent and in the amount of any payments made hereunder by the Trust to a Covered Person, to any cause of action said Covered Person may have against any tort feasor for injury to the Covered Person which results in payment being made by the Trust.

This means the Plan is not obligated to pay for services necessary on account of an injury or condition for which a third party is liable unless or until the Covered Person, or someone legally qualified and authorized to act for the Covered Person, promises in writing to:

(a) include those amounts in any claim the Covered Person makes against a third party for the injury or conditions; and

(b) repay the Plan those amounts to the extent that the proceeds of the Covered Person's recovery from a settlement with a third party by reason of such an injury or condition exceed his or her own portion of the total loss; repayment to the trust to be made within thirty (30) days of the receipt of such proceeds; and

(c) cooperate fully with the Plan in asserting its rights, to supply the Plan with any and all information and execute any and all instruments the Plan reasonably needs for that purpose.

IN THE EVENT CLAIMANT FAILS TO, OR REFUSES TO EXECUTE WHATEVER ASSIGNMENT, FORM OR DOCUMENT REQUESTED BY THE ADMINISTRATOR OF THE

PLAN, THE PLAN SHALL AND IS HEREBY RELIEVED OF ANY AND ALL LEGAL, EQUITABLE OR CONTRACTUAL OBLIGATION CONTAINED IN THIS THE ENTIRE PLAN FOR ANY BENEFITS OR COVERED EXPENSES INCURRED BY CLAIMANT.

The benefits available from the Fund are fixed by the Board and the level of benefits during a given period is dependent upon contributions to the Fund made by the School District and eligible participants, investment earnings and reserves, if any. To reduce rising health care costs, the Board has adopted certain cost containment measures. According to the Board, enforcement of the third-party reimbursement provision is such a measure. The provision, which has previously been enforced, operates to reimburse the Fund for claims paid by the Fund upon recovery from a third party liable for the participant's injury. Amounts recovered are added to the pool of assets and made available to pay additional claims and defray administrative costs. On August 12, 1986, Hunter was injured by a third party and incurred medical expenses. He filed a negligence action in the superior court and also made a claim to the Fund for payment of his medical bills. However, Hunter refused to execute the assignment of his cause of action required under section 6.10 of the trust document, and the Fund has refused to pay Hunter's medical expenses.

## PROCEDURAL HISTORY

The Board filed a declaratory judgment action against Hunter pursuant to A.R.S. section 12–1831 *et seq.* for a determination of the rights and obligations of the parties under section 6.10 of the trust document. Cross-motions for summary judgment were

filed. The trial court found that the third-party reimbursement provision was an assignment of a personal injury claim and was therefore void and unenforceable under Arizona law. Therefore the court granted Hunter's cross-motion for summary judgment and awarded attorney's fees to Hunter. The Fund filed this appeal.

## ISSUE

*Does Arizona Law Prohibit Enforcement of a Third–Party Reimbursement Provision by a Self–Insured Health Benefit Trust Fund?*

A. The General Rule

The parties agree that the third-party reimbursement provision creates an assignment of Hunter's personal injury claim, or the proceeds thereof, to the Fund. The parties also agree that the common law rule followed in Arizona is that, absent a statute, an assignment of a cause of action for personal injuries against a third-party tort-feasor is void and unenforceable. *Allstate Ins. Co. v. Druke*, 118 Ariz. 301, 576 P.2d 489 (1978); *State Farm Fire and Casualty Co. v. Knapp*, 107 Ariz. 184, 484 P.2d 180 (1971); *Harleysville Mutual Ins. Co. v. Lea*, 2 Ariz.App. 538, 410 P.2d 495 (1966).[1]

The Board argues, however, that the general rule does not apply, or should be qualified with respect to a self-insured health care trust fund. The Board contends that the public policy considerations that underlie the rule of non-assignment of a personal injury claim are applicable to a private, for-profit, insurance carrier, but not to an entity such as the Fund.[2] Hunter argues that Arizona's anti-subrogation law applies equally to a self-insured trust fund and a private carrier and that the rule should not be changed by this court. We agree with Hunter.

1. As Hunter points out in his brief, there is a split of authority in the various jurisdictions on this question. *See generally* Annot., *Assignability of Proceeds of Claim for Personal Injuries or Death*, 33 A.L.R.4th 82 (1984 & 1990 Supp.). Arizona takes the minority position. *See Allstate Ins. Co. v. Reitler*, 192 Mont. 351, 628 P.2d 667 (1981) (listing cases taking majority and minority positions).

2. A self-insurance program established under and in compliance with A.R.S. § 15–382 is exempt from regulation by the Department of Insurance. Op.Att'y Gen. No. 78–198 (Aug. 2, 1978); Op.Att'y Gen. No. 83–070 (June 24, 1983).

## B. Rationale for the Rule

Historically, the common law rule against assignment of a personal injury claim was based upon non-survivability of the cause of action as well as a concern that if such claims could be assigned, "unscrupulous people would purchase causes of action and thereby traffic in lawsuits for pain and suffering." *Harleysville*, 2 Ariz. App. at 541, 410 P.2d at 498 (citing *Rice v. Stone*, 83 Mass. 566 (1861)). However, Arizona cases have enunciated other policy reasons for non-assignability of personal injury claims. In *Harleysville*, this court identified the problem of apportioning a damage award from a third party subject to the assignment. We stated:

> To require the insured to subrogate these funds or to assign the amount to the insuror, especially when there is no way of apportioning the amount in the whole of the judgment or settlement, can only lead to further litigation, subterfuge and deceit.

*Id.* at 542, 410 P.2d at 499. The Arizona Supreme Court in *Knapp*, agreed with the reasoning in *Harleysville* and stated that to allow subrogation as to medical payments coverage would be "lifting the lid on a Pandora's box crammed with both practical and legal problems." 107 Ariz. at 185, 484 P.2d at 181 (quoting *Travelers Indemnity Co. v. Chumbley*, 394 S.W.2d 418, 425 (Mo.App.1965)).

Later, in *Druke*, the supreme court again affirmed the general rule against non-assignability of personal injury claims. In discussing the reasons favoring the rule, the court noted that a victim's medical expense insurance coverage generally does not provide full indemnity for all of the losses suffered, including lost earnings, attorney's fees, court costs, pain and suffering, and that under a repayment subrogation provision, the insurance company is fully reimbursed for medical expense payment even if the victim's tort recovery does not fully cover his losses. The court also stated that, to require the insured to return benefits for which he has paid premiums is to "deny him the benefits of his thrift and foresight." *Druke*, 118 Ariz. at 304, 576

P.2d at 492. Finally, the *Druke* court noted that the only justification for allowing recoupment to an insurance company of benefits paid is to reduce the premiums paid by the insured, but that, as a practical matter, this does not occur, resulting in an undeserved windfall to the insurer. The supreme court concluded that the rule against assignability of personal injury claims "is based in sound public policy." *Id.* Accordingly, the court has continued to adhere to this general rule. *See Chevron Chemical Co. v. Superior Court*, 131 Ariz. 431, 641 P.2d 1275 (1982); *Brockman v. Metropolitan Life Ins. Co.*, 125 Ariz. 246, 609 P.2d 61 (1980).

## C. Application of the Rule to the Fund

The Board argues that the rationale against subrogation discussed in *Druke*, does not apply to a self-insured trust fund. The Board alleges that, because the Fund is not a profit-making insurance company, enforcement of the reimbursement provision will not result in a windfall to the trust since its fiduciary responsibilities require the Board to return all recovered monies to the Fund to further benefit plan participants, rather than distribute them as profit to investors or shareholders. The Board argues that, since covered persons do not select and purchase benefits with after-tax dollars but receive pre-tax benefits as part of a compensation package, the considerations of "individual thrift and foresight" do not apply. The Board also contends that the concern about increased litigation to fix subrogation rights does not arise in this situation because the Board has a fiduciary duty to all plan participants to equitably compromise claims involving divergent interests. Finally, the Board claims that, unlike an insurance situation, contribution costs to participants are reduced by enforcement of the third-party reimbursement provision.

The rule prohibiting assignment of a personal injury claim has been applied by the Arizona courts without exception in a variety of contexts. In *Gallego v. Strickland*, 121 Ariz. 160, 589 P.2d 34 (App.1978), this court found the line of Arizona cases precluding subrogation to claims for medical

payments applicable to uninsured motor vehicle coverage. The court noted that the anti-subrogation rule set forth in *Druke*, which involved a subrogation provision in a motor vehicle insurance agreement, "leaves no room for an exception merely because it is an uninsured motorist who benefits in this case rather than an insured who has paid an additional premium for medical payment coverage." 121 Ariz. at 162, 589 P.2d at 36.[3]

In *Karp v. Speizer*, 132 Ariz. 599, 647 P.2d 1197 (App.1982), judgment debtors assigned proceeds from their personal injury claims to judgment creditors. This court found the assignment unenforceable, rejecting the creditors' claim that their case was distinguishable because they were not an insurance company. We held:

> We see no reason why the holding in [*Druke*] is not controlling here. In attempting to distinguish that case, appellants argue that an insurance company was there involved and, therefore, the public policy reasons given by the court in support of its decision are not relevant to the present appeal. However, the public policy reasons and legal principles underlying the general rule prohibiting the assignment of a claim for personal injuries which have been expressed throughout this decision have not been supported solely by insurance considerations, and we find those reasons to be equally applicable to the present situation.

*Id.* at 602, 647 P.2d at 1201. In *Schroeder v. Hudgins*, 142 Ariz. 395, 690 P.2d 114 (App.1984), *limited on other grounds* in *Franko v. Mitchell*, 158 Ariz. 391, 762 P.2d 1345 (App.1988), the rule was applied to prohibit assignment of a legal malpractice claim to a trustee in bankruptcy.

The legislature has by statute created exceptions to the anti-subrogation law. For example, A.R.S. section 20–259.01 allows a right of subrogation to an insurer against an uninsured motorist. *See Preferred Risk Mutual Ins. Co. v. Vargas*, 157 Ariz. 17, 754 P.2d 346 (App.1988). Also, A.R.S. section 12–962 allows subrogation rights to political subdivisions required by law to furnish medical care and treatment. A.R.S. section 23–1023 abrogates the rule in the context of Worker's Compensation benefits. *See Talley v. Industrial Comm'n of Arizona*, 137 Ariz. 343, 670 P.2d 741 (App.1983).[4]

However, we find no legal authority upon which to distinguish *Druke* and judicially qualify or alter the anti-subrogation rule. We apply *Druke* to these facts and hold that, in the absence of a statutorily created exception, a personal injury claim is not assignable to a self-insured trust fund created pursuant to A.R.S. section 15–382. Accordingly, the third-party reimbursement provision is unenforceable, and the judgment of the trial court is affirmed.

EUBANK and KLEINSCHMIDT, JJ., concur.

---

**3.** The uninsured motorist statute, A.R.S. § 20–259.01, was amended in 1982 to allow subrogation. *See American and Foreign Ins. Co. v. Allstate Ins. Co.*, 139 Ariz. 223, 225, 677 P.2d 1331, 1333 (App.1983).

**4.** The Board also notes that private sector health plans governed by federal law allow for reimbursement, citing *United Food & Commercial Workers & Employers Arizona Health & Welfare Trust v. Pacyga*, 801 F.2d 1157 (9th Cir.1986), and argues that the Fund should be treated similarly. That case involved a self-insured health plan similar to the one in this case but does not support the Board's position. Noting that the subrogation clause in the plan documents would violate Arizona's anti-subrogation law, and would be unenforceable if ERISA did not preempt state law, the Ninth Circuit held that state law was preempted by ERISA, thus allowing for enforcement of the provision.