**Roger DAUGHTRY, Plaintiff,**

v.

**UNION CENTRAL LIFE INSURANCE COMPANY; Union Pacific Railroad, Defendants.**

**Union Central Life Insurance Company, Counterclaimant,**

v.

**Roger Daughtry, Counterdefendant.**

**No. CIV 97–2102 PHX PGR.**

United States District Court,
D. Arizona.

Jan. 7, 1999.

Stuart J. Reilly, Phoenix, AZ, for plaintiff.

William M. Demlong, Bess, Kunz, Phoenix, AZ, for defendants.

## ORDER

ROSENBLATT, District Judge.

### I. *BACKGROUND*

Plaintiff Roger Daughtry ("Plaintiff"), a train locomotive engineer, was injured on the job on January 25, 1993 in Phoenix, Arizona, when he was over-taken by fumes. As a result of his injury, Plaintiff filed a lawsuit under the Federal Employers' Liability Act ("FELA") against Southern Pacific Transportation Company ("SP"), claiming damages arising out of the incident. Eventually, Plaintiff and Defendant Union Pacific Railroad ("UPR"), the legal successor to SP,

resolved the FELA lawsuit by a settlement agreement. The funds from the FELA lawsuit are being held by UPR pending the outcome of this litigation due to a lien against these funds held by Defendant Union Central Life Insurance Company ("Union").

Union issued a group disability insurance policy No. GH 8483 to SP and the Brotherhood of Locomotive Engineers ("Policy"). This Policy covered Plaintiff as a result of his employment and is subject to the Employee Retirement Income Security Act ("ERISA"). The Policy paid a weekly income disability benefit in the event an eligible employee became disabled. Plaintiff, an eligible employee, filed the claim for weekly income disability benefits under the Policy resulting from the January 25, 1993 accident.

The Policy provides for a "right of subrogation and refund" which requires Plaintiff to reimburse the Insurer any disability benefits received by him from any recovery he receives from his FELA lawsuit, after the payment of incurred attorneys' fees and expenses. The Policy further provides that the right to subrogation and refund acts as a lien in favor of the Insurer on any net disability benefits due Plaintiff from any recovery he received from his FELA lawsuit. Plaintiff acknowledged this reimbursement requirement, as well as the lien obligation, by signing a subrogation and refund agreement. The executed subrogation and refund agreement was then sent to UPR who likewise acknowledged the enforceability of the lien. This is the lien now in place against the proceeds of Plaintiff's settlement agreement with UPR in relation to the FELA lawsuit.[1]

Due to the existence of the lien on the proceeds of the FELA lawsuit, Plaintiff filed a complaint for declaratory relief in Maricopa County Superior Court on September 3, 1997. Defendants removed the matter to this court on October 10, 1997. The only relief Plaintiff seeks in his complaint is for the court to declare the lien invalid under Arizona law and direct UPR to pay all sums it holds to Plaintiff.

UPR filed its answer, and Union filed an Answer and Counterclaim. In its counterclaim Union seeks $20,580.03, a sum Union claims Plaintiff is obligated to repay it based upon the Policy's terms regarding simultaneous receipt of disability benefits and Railroad Retirement Act benefits, which Plaintiff received. Plaintiff failed to file an answer to the Counterclaim.

Union then filed a Motion for Summary Judgment, seeking judgment that the lien is enforceable under ERISA, and also seeking judgment that Plaintiff is obligated to repay the $20,580.03 in duplicative benefits. Union also sought entry of default against Plaintiff for failing to answer the counterclaim. Default was entered by the Clerk of the Court on July 15, 1998.

Plaintiff then filed a Motion to Vacate Entry of Default, as well as a response to the Motion for Summary Judgment. On November 23, 1998, Union filed a "Notice of Partial Case Resolution; Consent to Vacating Entry of Default" in which Union notes that it and Plaintiff have resolved the issue of Plaintiff's repayment of the $20,580.03 and that Plaintiff agrees that he must repay that amount. In addition, Union consents to vacating the entry of default entered by the Clerk on July 15, 1998.

Therefore, the court will vacate the entry of default entered by the Clerk on July 15, 1998, and hold that Plaintiff is obligated to repay Union the amount of $20,580.03 as a result of his simultaneous receipt of disability benefits and railroad retirement benefits. The only issue remaining in the lawsuit and in the motion for summary judgment is whether or not the lien against the FELA settlement proceeds is valid.

## II. DISCUSSION

### A. Standard

Summary judgment may be granted if the movant shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure.

---

**1.** Due to an agreement between Union and Plaintiff, discussed *infra,* the court has omitted a significant portion of the statement of facts related to an overpayment of benefits by Union to Plaintiff.

Summary judgment is proper if the non-moving party fails to make a showing sufficient to establish the existence of an essential element of his case on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The disputed facts must be material. *Id.*

Substantive law determines which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Moreover, the dispute must be genuine. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. In a civil case, the issue is:

> whether a fair-minded jury could return a verdict for the Plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

*Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512.

The opposing evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 242, 106 S.Ct. at 2510; *Aydin Corp. v. Loral Corp.,* 718 F.2d 897, 902 (9th Cir. 1983).

Because Plaintiff has failed to submit any statement of opposing facts, it would appear that there are no genuine issues of material fact. The only legal issue before the court is whether Arizona law or ERISA governs in determining the validity of the lien in question.

### B. Application

Neither party disputes that the Policy in question is subject to ERISA. However, Plaintiff claims that Arizona common law prohibits the subrogation of tort claims, and therefore the subrogation provision in the Policy is unenforceable. Plaintiff claims that Arizona common law is "saved" from ERISA preemption under the ERISA savings clause, 29 U.S.C. § 1144(b)(2)(A). Union claims that Arizona common law is not saved under the ERISA savings clause, and therefore the subrogation provision of the Policy is fully enforceable.

The preemption clause of ERISA states:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

29 U.S.C. § 1144(a).

The parties are in agreement that this provision applies to the Policy in question. However, Plaintiff claims the Arizona common law which prohibits subrogation of claims is saved by the following provision:

> Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(A). Plaintiff contends the Arizona common law in question "regulates insurance" and is therefore saved from ERISA preemption.

In determining whether a state law [2] falls within the purview of the ERISA savings clause, the United States Supreme Court has adopted a two part test:

> First, we took what guidance was available from a "common-sense view" of the language of the saving clause itself .... Second, we made use of the case law interpreting the phrase "business of insurance"

---

**2.** The Arizona common law in question could potentially fall within the savings clause of ERISA, if the savings clause is found to be applicable. For purposes of the savings clause, the term "state law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1) and (2).

under the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.*, in interpreting the savings clause. Three criteria have been used to determine whether a practice falls under the "business of insurance" for purposes of the McCarran–Ferguson Act:

> "*[F]irst,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry."...

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 48–49, 107 S.Ct. 1549, 1553–54, 95 L.Ed.2d 39 (1987) (citations omitted). In construing the first prong, common-sense understanding of the term "regulates insurance" contained in the savings clause, the Supreme Court stated that "[a] common-sense view of the word "regulates" would lead to the conclusion that in order to regulate insurance, a law must *not* just have an impact on the insurance industry, but must be specifically directed toward that industry." *Pilot Life,* 481 U.S. at 50, 107 S.Ct. at 1554.

Prior to the *Pilot Life* decision, the Ninth Circuit Court of Appeals had analyzed the Arizona anti-subrogation law in the context of ERISA and found that it did indeed "regulate insurance". *See United Food & Commercial Workers v. Pacyga,* 801 F.2d 1157 (9th Cir.1986). However, that analysis did not include the one factor added by the *Pilot Life* decision, i.e. whether the law was specifically directed toward the insurance industry.[3] Indeed, the *Pacyga* court noted that the Arizona anti-subrogation law was "enforced against both insurance companies and private parties...." *Pacyga,* 801 F.2d at

1161. This finding would lead to the conclusion that had *Pacyga* been decided after the *Pilot Life* decision, the ERISA savings clause would not have been applicable.[4]

Indeed, the Ninth Circuit Court of Appeals has analyzed application of the ERISA savings clause since the *Pilot Life* decision in the context of a state common law wrongful death action and found that the savings clause was not applicable due to the added factor in the *Pilot Life* decision:

> [Having found ERISA preemption], a state wrongful death action is not "saved" by the sole exception to ERISA's preemption rule. Although the ERISA preemption clause is broad, Congress created an exception for "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). Under this exception, a law must not just have an impact on an insurance company, "but must be specifically directed toward that industry." *Pilot [Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) ], 481 U.S. at 50, 107 S.Ct. at 1554. The cause of action for wrongful death at issue in this appeal is a general tort and clearly was not specifically tailored by the state to regulate insurance, banking, or securities.

*Spain v. Aetna Life Ins. Co.,* 11 F.3d 129, 132 (9th Cir.1993), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 340 (1994). This decision is instructive in that the Ninth Circuit Court of Appeals found that a general tort not directed specifically at insurance was preempted and not saved.

The Arizona anti-subrogation law is a creature of decisions by the Arizona courts; there is no specific statute.[5] However, it is clear from the decisions of the Arizona courts

---

3. The *Pacyga* court did note that one of the prongs of the test was whether the practice is limited to entities in the insurance industry; however, the court found that this factor was "less significant" because the other two factors of the test had been met. *See Pacyga,* 801 F.2d at 1161. Therefore, it is clear that the *Pacyga* court did not consider the impact on the insurance industry as required by the *Pilot Life* decision.

4. It should be noted that although the Ninth Circuit Court of Appeals found that the ERISA savings clause applied to the anti-subrogation law, it found that the "deemer" clause of ERISA,

29 U.S.C. § 1144(b)(2)(B), also applied, therefore nullifying the savings effect and subjecting the anti-subrogation law to ERISA preemption. *See Pacyga.*

5. There are, however, statutes which create exceptions to the Arizona anti-subrogation law. *See* A.R.S. § 20–259.01 (right of subrogation to an insurer against an uninsured motorist); A.R.S. § 12–962 (subrogation rights to political subdivisions required bylaw to furnish medical care and treatment); A.R.S. § 23–1023 (right to subrogation in context of Worker's Compensation benefits).

that the anti-subrogation law is not specifically directed toward the insurance industry, as required by *Pilot Life*, but is aimed at a broad spectrum of incidents involving subrogation. In *Piano v. Hunter*, 173 Ariz. 172, 840 P.2d 1037 (Ariz.App.1992), the Arizona Court of Appeals found that the "rule prohibiting assignment of a personal injury claim [anti-subrogation] has been applied by the Arizona courts without exception in a variety of contexts." 173 Ariz. at 175, 840 P.2d at 1040. In fact, the plaintiffs in the *Piano* case argued that the anti-subrogation law should not apply to them because they were *not* an insurance carrier; the Arizona Court of Appeals flatly rejected this distinction:

> In *Gallego v. Strickland*, 121 Ariz. 160, 589 P.2d 34 ([Ariz.]App.1978), this court found the line of Arizona cases precluding subrogation to claims for medical payments applicable to uninsured motor vehicle coverage. The court noted that the anti subrogation rule set forth in *Druke [Allstate Ins. Co. v. Druke*, 118 Ariz. 301, 576 P.2d 489 (1978)]*, which involved a subrogation provision in a motor vehicle insurance agreement, "leaves no room for an exception merely because it is an uninsured motorist who benefits in this case rather than an insured who has paid an additional premium for medical payment coverage." 121 Ariz. at 162, 589 P.2d at 36.

> In *Karp v. Speizer*, 132 Ariz. 599, 647 P.2d 1197 ([Ariz.]App.1982), judgment debtors assigned proceeds from their personal injury claims to judgment creditors. This court found the assignment unenforceable, rejecting the creditors' claim that their case was distinguishable because they were not an insurance company. We held:

>> We see no reason why the holding in [Druke] is not controlling here. In attempting to distinguish that case, appellants argue that an insurance company was there involved and, therefore, the public policy reasons given by the court in support of its decision are not relevant to the present appeal. However, the public policy reasons and legal principles underlying the general rules prohibiting the assignment of a claim for personal injuries which have been expressed throughout this decision have not been supported solely by insurance considerations, and we find those reasons to be equally applicable to the present situation.

> Id. at 602, 647 P.2d at 1200. In *Schroeder v. Hudgins*, 142 Ariz. 395, 690 P.2d 114 ([Ariz.]App.1984), limited on other grounds in *Franko v. Mitchell*, 158 Ariz. 391, 762 P.2d 1345 ([Ariz.]App.1988), the rule was applied to prohibit assignment of a legal malpractice claim to a trustee in bankruptcy.

*Piano*, 173 Ariz. at 175–76, 840 P.2d at 1040–41.

It is therefore clear from Arizona decisions interpreting the policy reasons for the anti-subrogation law that the anti-subrogation law is not aimed directly at insurance companies, but rather is a general policy against the assignment of tort claims to third parties. Therefore, under the *Pilot Life* test, the Arizona anti-subrogation law does not "regulate insurance" and is therefore not saved from preemption by the ERISA savings clause. Because the Arizona anti-subrogation law is not saved, it is preempted by ERISA, and ERISA alone governs the Policy in question.

Because the Policy in question is governed by ERISA, and because the Policy provides for a right of subrogation and refund which requires Plaintiff to reimburse Union for any disability benefits received by him from any recovery he receives from his FELA lawsuit, the court will grant Union's Motion for Summary Judgment and find that the lien currently in place against the FELA settlement funds in favor of Union is valid and enforceable.

IT IS THEREFORE ORDERED vacating the entry of default entered against Plaintiff by the Clerk of the Court on July 15, 1998.

FURTHER ORDERED granting Defendant Union's Motion for Summary Judgment [Doc. # 21]. Plaintiff's complaint and cause of action are dismissed and judgment shall be entered in favor of Defendants.[6] The

---

6. As UPR was only named as a Defendant because it held the FELA settlement proceeds until the dispute between Plaintiff and Union regarding the validity of the lien was settled, resolution of that issue also entitles judgment to be entered in favor of UPR as well.

court declares that the subrogation provision and the lien asserted by Union against the FELA settlement funds held by UPR are valid and enforceable. Union is therefore entitled to a lien on those funds in the amount of $56,784.00.[7]

FURTHER ORDERED entering judgment in favor of Union on its counterclaim in the amount of $20,580.03 against Plaintiff.

FURTHER ORDERED the Clerk of the Court shall enter judgment accordingly.

---

7. There is no dispute between the parties as to the amount of the lien in the event the lien was held to be enforceable.