IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| ARIZONA DEPARTMENT OF ADMINISTRATION, | ) ) ) | 2 CA-CV 2008-0198 DEPARTMENT A |
| Plaintiff/Appellant/Cross-Appellee, | ) ) | O P I N I O N |
| v. | ) ) | |
| JENNIFER COX and RICHARD COX, | ) ) | |
| Defendants/Appellees/Cross-Appellants. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20072162

Honorable Carmine Cornelio, Judge

AFFIRMED IN PART
VACATED IN PART AND REMANDED

Jennings Strouss & Salmon, P.L.C.
  By Douglas Gerlach and John C. West                                    Phoenix
                                        Attorneys for Plaintiff/Appellant/
                                                          Cross-Appellee


Haralson, Miller, Pitt, Feldman & McAnally, P.L.C.
  By Thomas G. Cotter                                                    Tucson
                                      Attorneys for Defendants/Appellees/
                                                          Cross-Appellants

H O W A R D, Chief Judge.

¶1        This case arises from appellant/plaintiff Arizona Department of Administration's (ADOA) claim that it was entitled to recover the cost of medical care that it provided to appellees/defendants Jennifer and Richard Cox through the state health insurance plan. ADOA appeals the trial court's decision granting summary judgment in favor of ADOA, but awarding it a much lower amount than it had claimed. In their cross-appeal, the Coxes contend ADOA is not entitled to reimbursement. We affirm the grant of summary judgment in favor of ADOA, but vacate the amount awarded and remand for the trial court to enter an award of $21,746.45.

**Facts**

¶2        The parties generally do not dispute the relevant facts. ADOA, an agency of the State of Arizona, operates a self-insured plan to provide health care benefits to state employees and their dependents. Medical services provided by the plan are paid for by a state "health insurance trust fund."[1]  A.R.S. § 38-654(A). ADOA contracts with United Healthcare Insurance Company to serve as a third-party administrator of the plan.

---

[1]To the extent the parties dispute certain assertions regarding the proper characterization of the state health benefits plan and trust fund, and the nature of the funds in the trust, these disputes are questions of law, which we review de novo later in this decision. *See Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994).

¶3         Jennifer and Richard Cox were involved in an automobile accident, from which they sustained injuries and required medical care and treatment. At the time of the accident, the Coxes were eligible participants in the state plan. The plan paid $25,012.11 for the Coxes' medical care and treatment. With the aid of counsel, the Coxes filed an action against the third party responsible for the accident and settled their claims against that party for $30,000. This settlement was not apportioned according to types of damages. In addition, the Coxes received $200,000 from their automobile liability insurance carrier under the underinsured motorist provision of their policy. ADOA demanded that the Coxes reimburse it for the amount the state had paid for the Coxes' treatment, pursuant to A.R.S. § 12-962. The Coxes refused and ADOA sued them. Both parties moved for summary judgment. The trial court granted summary judgment in favor of ADOA and against the Coxes, but awarded ADOA only $2,475.00.

**Discussion**

¶4         ADOA argues that, although the trial court properly granted summary judgment in its favor, the court erred in not awarding ADOA the full amount it had paid for the Coxes' medical care. The Coxes contend the trial court erred in awarding any amount to ADOA, arguing ADOA is not entitled to reimbursement for various reasons.

¶5         Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). We review de novo whether there are any genuine issues of material fact and

3

whether the trial court applied the law properly. *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, ¶ 8, 156 P.3d 1157, 1160 (App. 2007). We also review de novo questions regarding the construction of statutes. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994).

Whether ADOA can Assert a Claim

**¶6**      We first address the Coxes' claim on cross-appeal that ADOA may not assert a claim for reimbursement under § 12-962 because a resolution in the Coxes' favor on this matter would dispose of the issues ADOA raises on appeal.

*A. State or a Political Subdivision*

**¶7**      The Coxes first argue the health insurance trust fund is not "the state" or a "political subdivision" and therefore payments from the fund do not fall within the scope of § 12-962. That section provides:

> A. If this state or any of its political subdivisions provides medical care and treatment to a person who is injured or suffers from a disease under circumstances creating tort liability upon a third person, the state or political subdivision, either jointly or severally, may recover from the third person or the injured or diseased person the reasonable value of the medical care and treatment. . . .
>
> B. To enforce this right, the state or political subdivision may do the following:
>
>      . . . .
>
> 3.   Recover the cost of care from the injured or diseased person or the person's estate to the extent that such person has

4

received money in settlement of the claim or satisfaction of a judgment against the third party.

Section 38-654(A) established the employee health insurance trust fund "for the purpose of administering the state employee health insurance benefit plans. . . . The fund shall be administered by the director of the department of administration."

¶8        When construing a statute, we must "determine and give effect to legislative intent." *City of Phoenix v. Phoenix Employment Relations Bd.*, 207 Ariz. 337, ¶ 11, 86 P.3d 917, 920 (App. 2004). We look first to the plain language of the statute because that is the best indicator of legislative intent. *Mejak v. Granville*, 212 Ariz. 555, ¶ 8, 136 P.3d 874, 876 (2006). If the meaning of the language is clear, we do not employ any further methods of construction. *N. Valley Emergency Specialists, L.L.C. v. Santana*, 208 Ariz. 301, ¶ 9, 93 P.3d 501, 503 (2004).

¶9        When a statute is ambiguous, "'we consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose.'" *Scheehle v. Justices of the Supreme Court of the State of Ariz.*, 211 Ariz. 282, ¶ 16, 120 P.3d 1092, 1098 (2005), *quoting Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994). "Statutes must be given a sensible construction that accomplishes the legislative intent and which avoids absurd results." *Ariz. Health Care Cost Containment Sys. v. Bentley*, 187 Ariz. 229, 233, 928 P.2d 653, 657 (App. 1996); *see also City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶ 33, 181 P.3d 219, 230 (App. 2008) (when

5

interpreting particular term, "'we apply a practical and commonsensical construction'"), *quoting Douglass v. Gendron*, 199 Ariz. 593, ¶ 10, 20 P.3d 1174, 1177 (App. 2001).

¶10        Section 12-962(A) only requires that the state "provide[] medical care and treatment to a person who is injured" by a tort in order to recover the medical costs paid.  A common sense reading of § 38-654(A) is that the fund is merely the financial vehicle that the state, through ADOA, uses to "provide" and administer the state health insurance plan.  *See Clear Channel Outdoor*, 218 Ariz. 172, ¶ 33, 181 P.3d at 230 (commonsense construction applied to statutes); *see also Bentley*, 187 Ariz. at 233, 928 P.2d at 657 (term "state" encompasses "state department or agency").  From the standpoint of the injured plan participant, the medical care and treatment is provided by the state.

¶11        The Coxes cite *State v. Arizona Property and Casualty Insurance Guaranty Fund*, 192 Ariz. 390, ¶ 18, 966 P.2d 557, 562 (App. 1998), for the proposition that the health insurance trust fund established in § 38-654 is not the "State of Arizona" and therefore not an entity that can recover medical costs under § 12-962.  But that case did not involve § 12-962.  And it involved a different kind of "fund," established by an entirely different statute, for entirely different purposes, and comprising significant differences in structure and administration.  *See Ariz. Prop.*, 192 Ariz. 390, ¶ 7, 966 P.2d at 559.  As such, the case does not support the Coxes' assertion.

¶12        Under the Coxes' interpretation of § 38-654, the legislature has precluded the state from ever recovering under § 12-962 when the state provides medical care to its own

6

employees through the state health benefits plan. That interpretation would conflict with the plain language of § 12-962 and would vitiate its effect with respect to the state's self-insurance plan. Without some clear language in these statutes that this was the legislature's intent, we will not interpret them in such a manner. *See Mejak*, 212 Ariz. 555, ¶ 8, 136 P.3d at 876 (language best indicator of intent); *Pima County by City of Tucson v. Maya Constr. Co.*, 158 Ariz. 151, 155, 761 P.2d 1055, 1059 (1988) (statutes relating to same subject are pari materia and are construed together with other related statutes as one law); *see also State ex rel. Thomas v. Ditsworth*, 216 Ariz. 339, ¶ 12, 166 P.3d 130, 133 (App. 2007) (pari materia rule "'applies even where the statutes were enacted at different times, and contain no reference . . . to [each] other'"), *quoting State ex rel. Larson v. Farley*, 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970). ADOA's payments of the Coxes' medical bills, via the fund, are payments from the state for purposes of § 12-962.

## B. *Provision of Medical Services and Employee Contributions to the Plan*

¶13 The Coxes alternatively argue that § 12-962 contemplates recovery for the direct provision of medical care or treatment and does not apply to the *payment* for such services. They contend that because the state contracts with United Healthcare to provide the services, the statute does not apply. But "provide" simply means to "supply" or "make available." *The American Heritage Dictionary* 997 (2d college ed. 1982). By setting up the health care plan and paying for the service through United Healthcare, ADOA supplies and makes available medical care and treatment to a plan participant who is injured. The plain

7

meaning of § 12-962 therefore includes services provided through the plan administrator under § 38-654.

¶14 Division One of this court addressed a similar argument in *Bentley* and concluded that the Arizona Health Care Cost Containment System (AHCCCS), as a state agency, could recover under § 12-962 despite the fact that it contracted with other entities to actually provide the care. 187 Ariz. at 230, 233-34, 928 P.2d at 654, 657-58. We agree with the conclusion in *Bentley* and apply it here. We reject the Coxes' assertion that the payment for services is not within the scope of the statute.

¶15 The Coxes also challenge ADOA's assertion that the state actually paid for or provided their medical treatment on the grounds that the fund is made up in part by employee contributions. The Coxes argue that therefore the state's plan is not "self-funded" and, citing a Senate Fact Sheet, they claim lack of self-funding disqualifies it under § 12-962. *See* Senate Fact Sheet, S.B. 1346, 44th Leg., 1st Reg. Sess. (Ariz. 1999).

¶16 Section 12-962 does not require the state to provide medical care through a self-funded plan in order to seek reimbursement. And the Senate Fact Sheet on which the Coxes rely discusses "self[-]insured trust fund[s]," not self-funded plans. Even though the employees pay some of the costs of the health plan, the state "suppl[ies]" or "make[s] available" the services by administering the plan as required to come within § 12-962. *See The American Heritage Dictionary* 997.

8

¶17 Additionally, according to the Senate Fact Sheet mentioned above, when the legislature amended § 12-962 to remove the phrase "required by law," it did so in order to bring within the scope of the statute "[a]ll public entities that self insure for medical care." Senate Fact Sheet, S.B. 1346, 44th Leg., 1st Reg. Sess. (Ariz. 1999). The Fact Sheet specifically referred to *Lo Piano v. Hunter*, 173 Ariz. 172, 173, 840 P.2d 1037, 1038 (App. 1992), in which Division One of this court held that a public school district's self-insured trust fund could not be subrogated to a participant's third-party-tortfeasor claim. The fund in *Lo Piano* consisted of contributions by the school district, eligible participants, investment earnings, and reserves. *Id.* at 174, 840 P.2d at 1039. According to the Senate Fact Sheet, the legislative intent in amending § 12-962 was to make the statute applicable to trust funds like the one in *Lo Piano*. Senate Fact Sheet, S.B. 1346, 44th Leg., 1st Reg. Sess. (Ariz. 1999).

¶18 Section 38-654(A) provides that the state health insurance trust fund "shall consist of legislative appropriations, monies collected from the employer and employees for the health insurance benefit plans and investment earnings on monies collected from employees." Thus, the state fund is comparable to the fund in *Lo Piano* in that it is also made up of contributions from the employer, employee participants, and investment earnings. *See Lo Piano*, 173 Ariz. at 174, 840 P.2d at 1039. We conclude the legislative history unequivocally demonstrates an intent that § 12-962 apply to payments made via self-insured trust funds like the one at issue in this case. *See Scheehle*, 211 Ariz. 282, ¶ 16, 120 P.3d at 1098 (historical background considered when construing statute).

9

**¶19** The Coxes observe that the Fact Sheet states "[t]he State is not self insured." Senate Fact Sheet, S.B. 1346, 44th Leg., 1st Reg. Sess. (Ariz. 1999). The Coxes argue this shows the legislature did not intend for the statute to apply to the state. But subsequently, the state began to self-insure. *See* A.R.S. § 38-651; 2004 Ariz. Sess. Laws, ch. 335, § 1; Senate Fact Sheet, S.B. 1366, 46th Leg., 2d Reg. Sess. (Ariz. 2004). And the plain language of § 12-962 states it applies to the "state or any of its political subdivisions." *See Mejak*, 212 Ariz. 555, ¶ 8, 136 P.3d at 876 (language best indicator of intent). We presume that when the legislature amended the laws to require the state to self-insure, the legislature was aware of § 12-962. *See Home Builders Ass'n of Cent. Ariz. v. City of Maricopa*, 215 Ariz. 146, ¶ 15, 158 P.3d 869, 874 (App. 2007). If the legislature did not intend § 12-962 to apply to the state's self-insurance plan, it would have amended the statute accordingly.

**¶20** The Coxes also emphasize a section of the statute that requires employee contributions to the fund to be spent first and they allege ADOA fails to maintain a statutorily required accounting of employee and employer contributions. *See* § 38-654(B). This argument is irrelevant, however, because, as we conclude above, the state "provides" this medical plan and all monies in the fund make up the type of self-insured plan that the legislature specifically expanded § 12-962 to encompass. Nothing in the wording of § 12-962 or its history suggests the legislature intended to limit the applicability of the statute based on the source of monies used to pay for medical care or on the unrelated accounting requirements of another statute.

**¶21** The Coxes also point out that the legislature has created a "detailed statutory regime" for AHCCCS to recover costs including lien reimbursement provisions in § 36-2915. The Coxes suggest that the absence of a similar regime for recovery by the state fund in this case is evidence the legislature did not intend § 12-962 to apply to the state fund. But the mere absence of a specific lien reimbursement scheme for the state fund does not overcome the plain language of § 12-962 and the clear intent of the legislature to enable public entities that self-insure to recover under the statute. *See Mejak*, 212 Ariz. 555, ¶ 8, 136 P.3d at 876 (language best indicator of intent); Senate Fact Sheet, S.B. 1346, 44th Leg., 1st Reg. Sess. (Ariz. 1999).

*C. Relevance of Bidding Procedures and United Healthcare's Role*

**¶22** The Coxes next assert that United Healthcare did not follow required public bidding procedures when negotiating its contract with the state and that United Healthcare is not a licensed collection agency. The Coxes argue that consequently United Healthcare was not authorized to pursue subrogation on behalf of the state. But the plaintiff in this case is not United Healthcare, it is ADOA. The Coxes' argument regarding ADOA's contract with United Healthcare and the attempted collection efforts that took place before ADOA sued the Coxes is irrelevant. The Coxes offer no authority or argument to suggest a different result.

11

*D. Proper Plaintiff*

¶23  The Coxes last argument in their cross-appeal is that ADOA has no statutory authority to sue or be sued in its own name and that it is not permitted to hire outside counsel. With respect to the capacity to sue, implicit in the Coxes' argument is the suggestion that had the complaint at issue been filed in the name of the State of Arizona instead of the Arizona Department of Administration, this would be a non-issue. The court in *Bentley* addressed a similar argument regarding a lawsuit that listed AHCCCS as the plaintiff. 187 Ariz. at 233, 928 P.2d at 657. There, the defendants conceded that if the state had been listed on the complaint instead of AHCCCS, there would not have been a problem. *Id.* The court held, "Absent a clear legislative directive to the contrary, we will not deny recovery on such a distinction." *Id.* The court further concluded that "[a]n interpretation [of § 12-962] that would deny recovery to a state agency or department would render the statute meaningless." *Id.* We agree with the court in *Bentley*, 187 Ariz. at 233, 928 P.2d at 657, that the term "state" as used in § 12-962 encompasses "state department or agency" and we likewise will not deny recovery on the ground that ADOA was listed as the plaintiff instead of the State of Arizona. *Id*.

¶24  With respect to ADOA's retention of outside counsel, the Coxes cite A.R.S. § 41-192(E) for the proposition that no state agency other than the attorney general may employ legal counsel. Although this appears to be an accurate reading of § 41-192(E), the Coxes do not explain how the ADOA's purported violation of the statute defeats the lawsuit

12

against the Coxes. Section 41-192(E) could have some bearing in a dispute between the attorney general and ADOA regarding the employment of outside counsel. *See Fund Manager, Public Safety Pers. Ret. Sys. v. Superior Court*, 152 Ariz. 255, 257-58, 731 P.2d 620, 622-23 (App. 1986). Or, it could be relevant in a case in which ADOA sought to receive or recover state funds to pay outside counsel. *See School Dist. No. One of Pima County v. Lohr*, 17 Ariz. App. 438, 439, 498 P.2d 512, 513 (1972). But the Coxes do not cite, nor are we aware of, any authority that suggests an agency's alleged violation of § 41-192(E) constitutes legal grounds for dismissal of a lawsuit against another party. In sum, ADOA's retention of outside counsel has no bearing on the merits of this case.

¶25 In light of the foregoing, we reject the Coxes' claim on cross-appeal that the trial court erred in granting summary judgment in favor of ADOA. We therefore address ADOA's argument on appeal that the trial court erred in awarding ADOA less than the full value of its claim.

Whether the Coxes Must Reimburse the Full Amount of their Medical Bills

¶26 ADOA argues the trial court erred when calculating the amount it was entitled to recover under § 12-962[2] by applying a percentage ratio formula. ADOA further argues

---

[2]To the extent ADOA suggests on appeal that it has a contractual right to recover under the terms of the state health benefits plan, that argument was waived because, in its motion for summary judgment, ADOA only relied on its statutory rights to recover, pursuant to § 12-962. *See Pleak v. Entrada Prop. Owners' Ass'n*, 205 Ariz. 471, ¶ 22, 73 P.3d 602, 609 (App. 2003) (argument not asserted to trial court in motion for summary judgment waived on appeal), *aff'd*, 207 Ariz. 418, 87 P.3d 831 (2004). Accordingly, we will not consider any argument regarding independent enforceability of the terms of the state plan.

the court erred in deducting from their claim a portion of the Coxes' attorney fees incurred while pursuing their claim against the third-party tortfeasor.

*A. Apportionment Formula*

¶27 We first address ADOA's contention that the trial court erred in applying a percentage ratio to apportion the amount ADOA was entitled to recover. Section 12-962(A) grants the state the right to recover the reasonable value of the medical care provided to the injured plan participant pursuant to the methods specified in subsection B. To the extent of that right, the state is subrogated to the plan participant's "right or claim" against the third party. § 12-962(A). Subsection A also allows the state to require the plan participant "to assign the claim or cause of action [to the state] to the extent of the reasonable value of the medical care or treatment." As noted above, § 12-962(B)(3) allows the state, as one avenue of enforcing its right, to "[r]ecover the cost of care from the injured or diseased person . . . to the extent that such person has received money in settlement of the claim or satisfaction of a judgment against the third party."

¶28 This statute only limits the state's recovery to the money received; it does not suggest the injured person's other damages diminish the state's recovery. The state is subrogated to the entire "claim" against the third party to the extent of its right to recover. § 12-962(A). According to the plain language of this statute, ADOA is entitled to recover the cost of the Coxes' medical expenses from what the Coxes received from the third-party tortfeasor. *See Mejak*, 212 Ariz. 555, ¶ 8, 136 P.3d at 876 (language best indicator of intent).

14

¶29     The Coxes claim, however, that another statute, A.R.S. § 12-963, imposes a limitation on the amount ADOA can recover. Section 12-963(A) provides that the state may compromise or waive a claim it has pursuant to § 12-962. In addition, § 12-963(B) provides:

> Actions taken by this state or a political subdivision in connection with the rights afforded under this article shall not operate to deny the injured or diseased person *any recovery for that portion of his damage not covered by this article.* A release executed by the state or any of its political subdivisions shall not release a third party from any claims of the injured or diseased person except that the third party shall be entitled to offset amounts paid to the state or political subdivision if such expenses are included in the claim of the injured or diseased person.

(Emphasis added.) The Coxes contend that, based on the emphasized language, the state cannot take from them the portion of settlement proceeds allocated to damages other than compensation for medical expenses they have incurred. The trial court agreed with this interpretation but because the Coxes' $30,000 settlement with the third party had not been apportioned with respect to types of damages, the court fashioned a formula to determine what portion of the $30,000 was properly attributable to medical costs.[3]

_____

[3]The court reasoned that the total value of the Coxes' claim was $230,000 ($30,000 from the tortfeasor and $200,000 from the underinsured motorist insurance). The court applied a ratio between the Coxes' medical costs ($25,012.11) and the total value of their claim ($230,000) and concluded their medical costs comprised eleven percent of their claim. The court then concluded that because § 12-962 only applied to amounts recovered from a third-party tortfeasor, ADOA was only entitled to recover eleven percent of $30,000, or $3,300, minus a prorated portion of the Coxes' attorney fees.

15

¶30     Although this approach may seem equitable, the plain language of § 12-963(B) does not mention or provide for the apportionment the Coxes request. *See Mejak*, 212 Ariz. 555, ¶ 8, 136 P.3d at 876 (language best indicator of intent).  It simply treats the state's portion and the injured plan participant's portion as separate amounts and provides that the state's actions cannot deny the injured plan participants "any recovery" for their other damages.  § 12-963(B).  As the Coxes noted at oral argument, the difficulty of apportioning a claim is one of the reasons the courts have determined personal injury claims are nonassignable absent a specific statutory exception.  *See Lo Piano v. Hunter*, 173 Ariz. at 175, 840 P.2d at 1040.  Many factors go into the ultimate recovery, including the availability of assets or insurance.  In the absence of any statutory authorization for apportionment, neither the trial court nor this court can satisfactorily comply with § 12-963(B) by apportioning damages.  If the legislature had intended an apportionment to occur, it would certainly have spoken more clearly than the language in § 12-963.  Therefore, the Coxes argument must fail.

¶31     We also reject ADOA's interpretation of § 12-963.  ADOA argues the language in § 12-963(B) prohibiting the state from denying "any recovery for that portion of [a person's] damage[s] not covered by this article" simply means that as long as the amount the state claims for medical costs is less than the total amount recovered from the third party, the injured person has not been denied "any recovery."  Under that interpretation, the state could theoretically recover its entire claim as long as the injured person still had so much as

16

one dollar remaining from the amount recovered from the third party.[4] Or, if the state's claim was greater than the amount recovered from the third party, the state would satisfy the statute if it compromised its claim to leave one dollar for the injured party. But ADOA has not explained why the legislature would determine that it was important to leave the injured person something, but that even a nominal amount is sufficient. *See Bentley*, 187 Ariz. at 233, 928 P.2d at 657 (court applies sensible interpretation to avoid absurd results).

¶32        Moreover, when the legislature has determined that requiring the state to compromise a claim with the injured person is important, it has set forth the requirement in mandatory language and provided guidance on factors to be considered. Section 36-2915(H) is written as a mandatory direction to compromise any claim a public entity has pursuant to § 12-962 and several other statutes if necessary to achieve a "fair and equitable" settlement.[5] And § 36-2915(I) lists three factors to be considered in determining the extent of the compromise required. Section 12-963 contains no such provisions and would be an inadequate attempt by the legislature to impose such a compromise requirement. Accordingly, we reject ADOA's implicit suggestion that § 12-963(B) was intended to require a compromise of the state's claim with the injured party.

---

[4]We do not suggest that the result would be improper if the effect of our interpretation of § 12-962 resulted in the injured plan participant recovering only one dollar.

[5]At oral argument, both parties asserted that § 36-2915(H) was limited to payments involving federal money and was not applicable to this case. Accordingly, we do not address the issue.

**¶33** At oral argument, the Coxes questioned what § 12-963(B) could mean if it did not require apportionment. We interpret the first sentence of § 12-963(B) in the context of the second sentence. *See Burlington N. and Santa Fe Ry. Co. v. Ariz. Corp. Comm'n*, 198 Ariz. 604, ¶ 15, 12 P.3d 1208, 1211 (App. 2000) (court considers "individual provisions in the context of the entire statute"). The second sentence prevents the state's release of the third party from acting as a release by the plan participant of the third party. Similarly, we interpret the first sentence to have the same effect on the other actions the state is allowed to take. Treating the state's and the injured plan participant's portion of the claim separately, the first sentence provides that enforcement of the state's rights through intervention, subrogation, or direct collection from the injured plan participant, *see* § 12-962(B), does not excuse or release the third party from liability to the injured person for other non-medical expense damages. *See Clear Channel Outdoor*, 218 Ariz. 172, ¶ 33, 181 P.3d at 230 (court applies common sense interpretation). Here, there is no issue regarding the third party seeking to avoid additional obligation to the Coxes based on the state's enforcement of its rights under § 12-962.

**¶34** Finally, the United States Supreme Court case on which the Coxes rely, *Arkansas Department of Health and Human Services v. Ahlborn*, 547 U.S. 268 (2006), is not applicable. *Ahlborn* involved a dispute over whether Arkansas statutes somewhat similar to §§ 12-962 and 12-963 violated federal Medicaid laws, which require apportionment of medical costs out of the total amount recovered from a third party. 547 U.S. at 278-80, 288.

18

No such dispute is at issue here and the analysis in *Ahlborn* is not controlling or instructive. In sum, we conclude the trial court erred in applying an apportionment formula to determine the amount ADOA is entitled to recover.

*B. Attorney Fees*

¶35        ADOA also contends the trial court erred in determining that its share of the Coxes' settlement with the third party should be reduced by a portion of the attorney fees the Coxes paid. As previously noted, the Coxes settled with the third-party tortfeasor for $30,000. They paid $8,253.55 in attorney fees and costs, which left them with a net recovery of $21,746.45. ADOA asserts it is entitled to its entire claim of $25,012.11 from the original $30,000 and that its recovery should not be reduced by the payment of attorney fees.[6]

¶36        Section 12-962(B)(3) provides the state may "[r]ecover the cost of care from the injured or diseased person or the person's estate to the extent that such person has received money in settlement of the claim or satisfaction of a judgment against the third party." Nothing in § 12-962 expressly provides that attorney fees or costs are to be deducted

---

[6]ADOA also suggests in one part of its brief that it is entitled, under § 12-962, to recover from the $200,000 the Coxes received from the underinsured motorist provision of their insurance policy. But in another part of its brief, ADOA seems to concede that § 12-962 does not permit the state to recover anything other than what is recovered from the third party. According to the plain and unambiguous language of § 12-962, the state's recovery is limited to "circumstances creating tort liability upon a third person." Underinsured motorist coverage arises from contractual liability. *See Blutreich v. Liberty Mut. Ins. Co.*, 170 Ariz. 541, 545, 826 P.2d 1167, 1171 (App. 1991). We therefore reject any argument that ADOA could claim a portion of the $200,000 under § 12-962. *See N. Valley Emergency Specialists*, 208 Ariz. 301, ¶ 9, 93 P.3d at 503 (when statute's meaning clear, no further construction methods applied).

from the amount the injured person recovers from the third party before the state may claim its share. But § 12-962(B)(3) limits the recovery from the injured person "to the extent that such person has received money in settlement of the claim or satisfaction of a judgment." If the legislature had intended that the state be able to recover the entire value of the claim, it could simply have said "to the extent of the claim." Therefore the legislature has limited the recovery to the money received, not the full value of the claim. And, as a practical matter, injured persons do not receive the money that their lawyer earns by representing them. Rather, the lawyer generally has a claim to that money as soon as a settlement agreement is reached or a judgment obtained, and the lawyer is entitled to those funds before the proceeds are disbursed to the client. *See Langerman Law Offices, P.A. v. Glen Eagles at Princess Resort, LLC*, 220 Ariz. 252, ¶ 9, 204 P.3d 1101, 1103 (App. 2009). Thus, construing § 12-962(B)(3) to allocate the lawyer's fee to the injured person would be impractical and unfair. *See Clear Channel Outdoor*, 218 Ariz. 172, ¶ 33, 181 P.3d at 230 (practical and commonsensical construction applied).

¶37         Additionally, to permit ADOA to take more than the Coxes' net recovery from the third party does not comport with the spirit of the statute. *See Scheehle*, 211 Ariz. 282, ¶ 16, 120 P.3d at 1098 (spirit and purpose considered when construing statute). The legislature clearly did not intend § 12-962 to permit the state to recover anything other than what the injured person has recovered from the third party. But if the Coxes have to pay ADOA the full $25,012.11—despite the fact that their net recovery is only $21,746.45—then

they will essentially be paying $3,265.66 out of their own pockets to reimburse the state for their medical care. The more sensible way to construe § 12-962(B)(3) is to interpret the language "to the extent that such person has received money in settlement of the claim or satisfaction of a judgment against the third party" as referring to the injured person's net recovery after paying attorney fees and costs. *See Bentley*, 187 Ariz. at 233, 928 P.2d at 657 (sensible construction applied to achieve legislative intent).

¶38 Moreover, we agree with the trial court's reliance on the "common fund doctrine" as applied in *LaBombard v. Samaritan Health System*, 195 Ariz. 543, 991 P.2d 246 (App. 1998). "The common fund doctrine is a general rule of equity that 'a person or persons who employ attorneys for the preservation of a common fund may be entitled to have their attorney's fees paid out of that fund.'" *Id.* ¶ 22, *quoting In re Estate of Brown*, 137 Ariz. 309, 312, 670 P.2d 414, 417 (App. 1983). *LaBombard* involved a hospital that had incurred costs caring for a patient that had been injured by a third party. *Id.* ¶ 31. The hospital could not pursue the patient directly for payment because she had been "admitted under an AHCCCS or Medicare type of program." *Id.* The hospital could only recover from the third party who had injured the patient and therefore its interest was contingent on the patient's litigation against that third party. *Id.*

¶39 Similarly here, ADOA cannot pursue the Coxes for the cost of treatment under § 12-962, except to the extent they have recovered from the third party. Without the Coxes'

litigation against the third party, ADOA would recover nothing.[7] *See LaBombard*, 195 Ariz. 543, ¶ 32, 991 P.2d at 254. Because the Coxes did pursue their claim against the third party, ADOA will directly benefit from the work done by the Coxes' attorney. *See id.* But if the Coxes are required to pay the entire amount claimed by ADOA, then they are put in a worse economic position as a result of having successfully litigated their claim against the third party. Such a result would be "'fundamentally unfair.'" *Id.*, *quoting Martinez v. St. Joseph Healthcare Sys.*, 871 P.2d 1363, 1366-67 (N.M. 1994).

**¶40** Thus, both equitable principles and a sensible reading of the statutes favor imposing on ADOA a portion of the Coxes' attorney fees and costs by deducting those fees and costs from the settlement before determining the amount available to reimburse ADOA. Under the facts of this case, the state is entitled to recover what it has paid for medical care up to the net amount the injured persons have obtained from the third party. Because ADOA's claim for medical costs exceeds the Coxes' net recovery, ADOA may recover no more than the amount of that net recovery.[8]

---

[7]Although ADOA could have pursued the third party directly, *see* § 12-962(B)(2), it did not pursue the claim during the time period allowed under A.R.S. § 12-542(1), and therefore would have received nothing without the Coxes' litigation.

[8]If this decision does not interpret § 12-962 as the legislature intended, we note that the "'legislature retains the power to correct us.'" *Hancock v. Bisnar*, 212 Ariz. 344, ¶ 22, 132 P.3d 283, 288 (2006), *quoting Galloway v. Vanderpool*, 205 Ariz. 252, ¶ 17, 69 P.3d 23, 27 (2003).

**Conclusion**

**¶41** In light of the foregoing we affirm the grant of summary judgment in favor of ADOA, but vacate the amount awarded and remand for the trial court to enter an award of $21,746.45.

**¶42** Citing A.R.S. § 12-341.01, ADOA has requested attorney fees incurred below on appeal. But ADOA has not identified under what subsection of § 12-341.01 it seeks fees and has not provided any argument to justify its request for fees below or on appeal. Therefore we deny ADOA's request.

_____
JOSEPH W. HOWARD, Chief Judge


CONCURRING:


_____
PHILIP G. ESPINOSA, Presiding Judge


_____
JOHN PELANDER, Judge